UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **In re:** | **CASE N0. 16-50876** |
| **LOUISIANA CRANE AND CONSTRUCTION, LLC,** | **CHAPTER 11** |
| **DEBTOR** | |

**MOTION FOR INTERIM ORDER (I) APPROVING SENIOR SECURED SUPERPRIORITY POST-PETITION FINANCING AGREEMENT, (II) USE OF CASH COLLATERAL, (III) GRANTING SECURITY INTERESTS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

NOW INTO COURT, through undersigned counsel, comes the debtor-in-possession Louisiana Crane and Construction, LLC (the "Debtor"), who files this Motion for Interim Order (I) Approving Senior Secured Superpriority Post-Petition Financing Agreement, (II) Use of Cash Collateral, (III) Granting Security Interests and Super-Priority Administrative Expense Treatment, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief (the "Motion") under sections 105, 361, 362, 363(c), 364, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the following reasons:

## Background

1.

On June 27, 2016 (the "Petition Date"), the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code.

2.

The Debtor and Amegy Bank Business Credit, a division of ZB, N.A., ("Amegy" or "Secured Party") have reached a tentative agreement, subject to court approval, whereby Amegy in its sole discretion may provide debtor in possession financing for working capital by factoring pre-petition and post-petition receivables. The Debtor and Amegy have a pre-petition financing arrangement, which among other things, provides for the purchase and sale of Debtor's receivables to Amegy ("factoring") and provides Amegy with a first lien security interest in non-factored receivables and other assets (the "Collateral" as defined in the factoring agreement). Upon information and belief, no other creditor currently has a security interest in pre-petition receivables, although the IRS may have a tax lien with rights, at least potentially, against the Debtor's receivables.

3.

In order to provide financing services to the Debtor on a post-petition basis, Amegy and the Debtor have agreed, contingent upon entry of an Order substantially in the form of the proposed order attached hereto, to continue factoring under the same terms as the pre-petition agreements, copies of which are attached hereto *in globo* as Exhibit 1, including, without limitation, all subsequent amendments thereto (the "Agreement"). The Agreement was recently amended to reflect a price adjustment and the addition of a new party (LCC of Alaska; Debtor's affiliate).

4.

The Debtor seeks authorization to sell and assign its accounts to the Secured Party pursuant to Bankruptcy Code § 363, subject to the terms of the Agreement, and to execute all documents and take all actions to be executed and taken in connection with and in furtherance of all undertakings and obligations thereunder including, but not limited to, executing the Agreement and the Secured Party has agreed to in the sole discretion of the Secured Party in the exercise of its reasonable sole credit or business judgment, purchase accounts from the Debtor pursuant and subject thereto. In the event the Motion is granted, Secured Party will not be required to or obligated to purchase accounts from the Debtor or make advances therefore.

5.

The Debtor is unable to obtain sufficient financing on more favorable terms from sources other than the Secured Party under the Agreement and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Debtor granting to the Secured Party, the Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Motion and in the Agreement. The only available source of secured credit available to the Debtor is the Cash Collateral (as defined below) Debtor is permitted to use under the Agreement and an order granting this Motion. A copy of the Declaration executed by Doug Marcantel is attached hereto as Exhibit 2.

6.

The Debtor will require Amegy's financial services before its payroll obligation on July 1, 2016. This reorganization could be derailed in its infancy if payroll is not met.

7.

The Agreement has been negotiated in good faith and at arm's length among the Debtor and the Secured Party, and the terms of the Agreement and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration, and all interested parties were notified of the Motion as required by the applicable provisions of the Bankruptcy Code and the Local Rules of this Court. The Secured Party is not willing to enter into this Agreement under any terms other than as set forth herein and in the attached Agreement. A copy of the Declaration executed by Alan Atchley, Senior Vice President of Amegy is attached hereto as Exhibit 3.

8.

The Debtor has provided written notice of the filing of the Motion to the United States Trustee, the twenty largest unsecured creditors of the Debtor, all of the Debtor's secured creditors, the Internal Revenue Service, and all parties who filed requests for notice as evidenced by the affidavit of service filed by the Debtor's counsel with this Court. Debtor submits this notice, for interim purposes, is appropriate and adequate under Federal Rules of Bankruptcy Procedure 2002 and 4001, and as required by § 364 of the Bankruptcy Code.

**Relief Sought**

9.

The Agreement provides a vital source of working capital for the Debtor, is in the best interests of the Debtor and its estate, and is necessary to the preservation and maintenance of the going concern value of the Debtor's estate and to a successful reorganization of the Debtor.. Therefore, the Debtor seeks approval to incur secured indebtedness to the Secured Party pursuant

to this Motion and the Agreement in such amounts as authorized in the attached budget (the "Budget") which includes expenditures incurred in the ordinary course of its business. The Debtor requests entry of this Order pursuant to Bankruptcy Rules 4001(b)(1) and 4001(c)(1). The authorization granted herein on an interim basis to use Cash Collateral and to enter into the Agreement is necessary to preserve the going concern value of the Debtor and its estate.

10.

Therefore, the Debtor desires to sell and assign its accounts to the Secured Party pursuant to Bankruptcy Code § 363, subject to the terms of the Agreement, and to execute all documents and take all actions to be executed and taken in connection with and in furtherance of all undertakings and obligations thereunder. The Debtor shall be authorized to sell and assign to Secured Party (i.e. factor) the Debtor's Pre-Petition and Post-Petition accounts receivable and to execute all documents in connection with and in furtherance of the Agreement, and the Secured Party shall be permitted to make advances to Debtor. All of Debtor's newly created accounts which are factored with the Secured Party shall be deemed sold to and all ownership rights in all newly created accounts shall be transferred to Secured Party free and clear of any liens, claims and encumbrances pursuant to the terms of the Agreement, and when purchased from Debtor shall not constitute property of the Debtor's estate.

11.

Moreover, pursuant to sections 364 (c)(1), 364(c)(2), and (c)(3) and (d)(1) of the Bankruptcy Code, the Debtor seeks to grant Secured Party validly perfected, enforceable and non-avoidable first priority security interest in and lien on all assets (tangible, intangible, real, personal and mixed, including, without limitation, the Collateral described in the Agreement) of the Debtor, whether now owned or hereafter acquired (the "Liens"), as collateral for all present and future

obligations of the Debtor to Secured Party, whether arising under the Agreement or otherwise, both pre-petition and post-petition, and including Secured Party's attorney's fees and expenses incurred in connection with the negotiation, documentation, closing and enforcement of the Agreement and the protection of Secured Party's rights thereunder and in this Bankruptcy Case (the "Obligations"). Secured Party's security interest in Debtor's Pre-Petition and Post-Petition accounts receivable shall be, and remain, senior to any present or future federal tax liens, state tax liens or obligations, any present or future claims by judgment creditors, and any future setoff claims made by any governmental entity as an account debtor for the Debtor.

Such obligations described above shall constitute super-priority administrative expense claims under § 364(c)(1) of the Bankruptcy Code, which shall be deemed allowed, without any further filing by the Secured Party, and which shall have priority over any and all administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code ("Superpriority Claims"), except with respect to the carve out for the United States Trustee's entitlement and priority to collect any and all statutory fees during the pendency of this chapter 11 proceeding ("Carve Out").

12.

The Debtor proposes that it shall pay to the Secured Party, the Secured Party's reasonable attorney's fees and other professional fees arising from or related to the transactions contemplated herein and in the Agreement, including without limitation, those incurred in connection with the negotiation, documentation, closing and enforcement of the Agreement and the protection of Secured Party's rights thereunder and in this Bankruptcy Case.

13.

The Liens the Debtor seeks approval to grant to the Secured Party herein will be deemed

validly granted, duly attached, and properly perfected, without the need of any additional actions being taken by or on behalf of the Secured Party, including but not limited to, the filing or recording of Uniform Commercial Code financing statements; provided, however, that in the event the Secured Party does make such a filing or recordation, the Debtor shall execute all documents required by the Secured Party to do so. A certified copy of the Order may, in the discretion of the Secured Party, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the Order for filing and recording. For the avoidance of doubt, upon approval of the Motion, the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Secured Party to take all actions, as applicable.

14.

Upon approval of the Motion, the Debtor may use the Secured Party's "cash collateral" as such term is defined in section 363(a) of the Bankruptcy Code, including, without limitation, any accounts receivable and general intangible and any other cash or right that would be included in such definition of "Cash Collateral" within the meaning of section 363(a) of the Bankruptcy Code), without the additional prior written consent of the Secured Party in accordance with the approved Budget attached hereto or as may be further permitted by Order of this Court after notice and hearing. Such right shall terminate automatically upon the earliest of (x) July ___, 2016 (two business days after the final hearing on this Motion) and (y) five (5) Business Days' written notice provided by the Secured Party to the U.S. Trustee, the Debtor, any appointed committee, or provided by the Debtor to the Secured Party, through their respective counsel, of the occurrence and continuance of any event of default under the Agreement or this

Order. To avoid doubt, the use of Cash Collateral is permitted up to the full extent of the Carve Out, defined herein as the amounts necessary to pay all United States Trustee quarterly fees and statutory expenses of the Clerk of Court.

The Debtor agrees that it will not use the proceeds of any advance from Secured Party: (a) in connection with the investigation, assertion, commencement or continuation of any action or claim against the Secured Party, or (b) to object to or contest, or raise any defenses to the validity, perfection, priority or enforceability of any rights or claims of the Secured Party.

The Debtor shall not be permitted to seek to surcharge Secured Party or the Collateral with any expense of the type described in sections 506(c) or 552(b) of the Bankruptcy Code unless it obtains Secured Party's prior written consent to the incurrence of such expenses. The Agreement is enforceable according to its terms and nothing contained therein is unlawful, unenforceable or violative of any usury or similar statute.

15.

As a condition to entering into the Agreement on a post-petition basis, The Debtor admits, stipulates, and agrees that pursuant to the Agreement the Debtor granted Secured Party a first priority lien on, and first priority security interest in, all right, title, and interest in Debtor's assets, in each case whether now existing or thereafter acquired, in each case, to the extent provided for in the Agreement.

The Debtor further admits, stipulates, and agrees that as of the Petition Date, the aggregate amount of the Agreement due and payable by the Debtor to the Secured Party under the Agreement equaled approximately $5,857,107.12 (the "Prepetition Obligation"). This claim constitutes the legal, valid, and binding obligation of the Debtor, enforceable against it in accordance with the terms of the Agreement (other than in respect of the stay of enforcement

– 8 –

16-50876 - #3 File 06/27/16 Enter 06/27/16 17:04:35 Main Document Pg 8 of 11

arising from section 362 of the Bankruptcy Code). No portion of this claim or any payment on account thereof is subject to avoidance, recharacterization, recovery, reduction, subordination, disallowance, impairment, or any other challenges pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and the Debtor does not have, hereby forever releases, and is forever barred from bringing any "claims" (as such term is defined in the Bankruptcy Code), counterclaims, cross claims, causes of action, defenses, recoupment, or setoff rights, whether arising under the Bankruptcy Code or otherwise, against Secured Party whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance, or other claim arising under the Bankruptcy Code or otherwise.

Furthermore, and for avoidance of doubt, Secured Party will not be required to file proofs of claim in the Debtor's case in respect of any claims arising under or related to Prepetition Obligation, the Liens, the Agreement or the Superpriority Claims. The Debtor's stipulations and admissions contained shall be deemed to constitute a timely proof of claim for the Secured Party upon approval of this Motion, and the Secured Party shall be treated under section 502(a) of the Bankruptcy Code as if the Secured Party has filed a proof of claim and shall have an allowed claim with respect to the Prepetition Obligation for the purposes of credit bidding. Secured Party does not waive, alter, or modify the Secured Party's right to file, amend, and/or supplement, in its sole discretion, a proof of claim(s) in the Debtor's bankruptcy case for any claim allowed herein.

Upon approval of the Motion, the Secured Party shall have the right to credit bid up to the full amount of the Liens or the Prepetition Obligation in connection with any sale of the Collateral conducted (i) pursuant to a plan of reorganization subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code or (ii) pursuant to section 363 of the

- 9 -

16-50876 - #3 File 06/27/16 Enter 06/27/16 17:04:35 Main Document Pg 9 of 11

Bankruptcy Code.

16.

An event of default ("Event of Default") under the Agreement and an order granting the Motion shall include the following:

a. the Debtor's failure to perform or comply with any of the material terms, conditions, or covenants of this Order;

b. the Debtor's failure to perform or comply with any of the terms, conditions, or covenants of the Agreement;

c. the termination of this Order by its own terms, operation of law or court order;

d. the dismissal of this Bankruptcy Case;

e. the appointment of a trustee under the Bankruptcy Code;

f. any material deviation from the Budget unless approved by the Secured Party;

g. the conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code.

Upon the occurrence of an Event of Default, Secured Party shall provide written notice to the U.S. Trustee, the Debtor, any appointed committee, of the occurrence and continuance of any Event of Default. If the Debtor fails to cure the Default within five (5) business days from the time of service of such notice of the Default, the Debtor shall hold and segregate all Cash Collateral in trust for the Secured Party and the rights and obligations created under this Order shall cease immediately without further Order from this Court. Nothing in this Motion shall (i) prohibit the Debtor from seeking to obtain financing for accounts not purchased by Secured Party, or (ii) seeking to obtain the use of cash collateral consisting of any such accounts.

17.

Finally, the Debtor asks the Court to set a final hearing on the Motion for a date that is __ days from the date of an Order granting the Motion along with a deadline for all parties-in-interest to file objections to the Motion.

18.

A copy of the proposed Order, which includes the Budget, is attached hereto as Exhibit 4.

WHEREFORE, after notice and a hearing, the debtor-in-possession prays for entry of an Order substantially in the form of Exhibit 4 hereto, together with the fixing of a final hearing on the relief sought herein and for any other relief as is just and equitable under the circumstances.

RESPECTFULLY SUBMITTED:

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.

/s/ Michael A. Crawford
Brett P. Furr (#17,572)
Michael A. Crawford (#22315)
Post Office Box 2471
450 Laurel Street, 8th Floor
Baton Rouge, Louisiana 70821-2471
(225)381-0201 Tel.
(225)346-8049 Fax
***Proposed Special Counsel for the Debtor***