# UNITED STATES BANKRUPTCY COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

In re:

LOUISIANA CRANE AND
CONSTRUCTION, LLC

CASE NO. 16-~~50374~~ 50876 _Mhc_

CHAPTER 11

DEBTOR

### DECLARATION OF AMEGY BANK IN SUPPORT OF THE DEBTOR'S MOTION TO APPROVE DIP FINANCING

I, _Robin Gutierrez_ , declare as follows under penalty of perjury:

1. I am a _Senior Vice President_ (title) of Amegy Bank Business Credit, a division of ZB, N.A. ("Amegy" or "Secured Party"). I have served in that capacity for Amegy for _10_ years. I have experience in restructuring and providing financing options to companies in distressed situations. Secured Party and Louisiana Crane and Construction, LLC (the "Debtor") had a financing relationship prior to the Debtor filing this bankruptcy case. This declaration is made upon and to the best of my personal knowledge unless otherwise noted herein. If I were called upon to testify, I would and could testify competently to the facts set forth in this Declaration.

2. Secured Party provides liquidity financing options including factoring of receivables to companies both in and out of bankruptcy. The agreement ("Agreement") attached to the Motion for Interim Order (I) Approving Senior Secured Superpriority Post-Petition Financing Agreement, (II) Use of Cash Collateral, (III) Granting Security Interests and Super-Priority Administrative Expense Treatment, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief ("Motion") is consistent with the terms and conditions

EXHIBIT
3

Secured Party requires in order to provide the liquidity financing services for its clients, and in this case, the Debtor. The Agreement is the same as the pre-petition arrangement existing between Secured Party and the Debtor, except for recent amendments thereto, as noted on the amendments filed therewith (namely, Debtor's Alaskan affiliate was added to the factoring agreement, and the pricing structure was changed).

3. In order to provide this service for a chapter 11 debtor, Secured Party must also be afforded the additional protections described in the Motion and proposed Order attached as an exhibit to the Motion, including, but not limited to, a validly perfected, enforceable and non-avoidable first priority lien on, and first priority security interest in, all right, title, and interest in Debtor's assets (the "Collateral"), whether now owned or hereafter acquired (the "Liens") and a super-priority administrative expense claim for the obligations as set forth in the Motion which shall have priority over any and all administrative expenses of the kind, including, without limitation, reasonable attorneys' fees and expenses incurred in connection with the negotiation, drafting and prosecution of the Motion, subject only to the carve out described in the Motion and proposed Order ("Superpriority Claims"). These proposed protections are entirely consistent with Orders entered in other chapter 11 bankruptcy cases in which Secured Party has agreed to provide postpetition financing for a debtor-in-possession. These protections are a key factor in Secured Party's decision to provide financing to the Debtor on a postpetition basis.

4. Secured Party will not provide this service to the estate on an unsecured basis or on the mere promise of ordinary administrative expense claim treatment.

5. In exchange for the Debtor's consideration, Secured Party will be authorized to purchase accounts from the Debtor or make advances therefore, in its sole discretion. Furthermore, Secured Party agrees to allow the Debtor to use Secured Party's cash collateral (namely, the cash from the purchase of Debtor's receivables) without the additional prior written consent of

- 2 -

Secured Party in accordance with an approved budget. The Agreement does not require, and Secured Party is not obligated to purchase accounts from the Debtor or make advances under the Agreement.

6. The Agreement has been negotiated in good faith and at arm's length among the Debtor and Secured Party, and the terms of the Agreement and the use of cash collateral on the terms provided for in the Motion, respectively, are fair and reasonable under the circumstances, and are supported by reasonably equivalent value and fair consideration.

7. Furthermore, prior to the date the Debtor filed its chapter 11 petition, the Debtor granted Secured Party a first priority lien on, and first priority security interest in, all right, title, and interest in the Collateral, to the extent provided for in the Agreement

8. As of the Petition Date, the aggregate amount of the Agreement due and payable by the Debtor to Secured Party under the Agreement, equaled approximately $5,857,107.12 (the "Prepetition Obligation"). As part of the negotiation of the Agreement, the Debtor has agreed to stipulate to the amount of the Prepetition Obligation and stipulate that it constitutes a legal, valid, and binding obligation of the Debtor, enforceable against it in accordance with the terms of the Agreement, and that no portion of the Prepetition Obligation or any payment on account thereof is subject to avoidance, recharacterization, recovery, reduction, subordination, disallowance, impairment, or any other challenges pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and the Debtor does not have, hereby forever releases, and is forever barred from bringing any "claims" (as such term is defined in the Bankruptcy Code), counterclaims, cross claims, causes of action, defenses, recoupment, or setoff rights, whether arising under the Bankruptcy Code or otherwise, against Secured Party whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance, or other claim arising under the Bankruptcy Code or otherwise. The Prepetition Obligation also includes

– 3 –

obligations of the Debtor under its commercial credit card with Amegy, and under its guaranty agreement regarding the obligations of Louisiana Liquid Services, L.L.C. The Collateral also includes the Debtor's operating account currently held at Amegy, and a certificate of deposit in the amount of $250,000.

9.   To the best of my knowledge, the Agreement between Secured Party and Debtor provides a vital source of working capital for the Debtor, is in the best interests of the Debtor and its estate, and is necessary to the preservation and maintenance of the going concern value of the Debtor's estate and to a successful reorganization of the Debtor. Additionally, it provides the Secured Party with all of the standard protections and safeguards debtor in possession financers are traditionally allowed in these scenarios.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 11, 2016.

_____
Signature of Amegy Authorized Representative

_____
Printed Name

_____
Title

583238-1

1350572.v1