# UNITED STATES BANKRUPTCY COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

In re:              :

LOUISIANA CRANE AND    :   NO. 16-5_____
CONSTRUCTION, LLC       :

                       :   Chapter 11

    Debtor.           :

### INTERIM ORDER (I) APPROVING SENIOR SECURED SUPERPRIORITY POST-PETITION FINANCING ARRANGEMENT, (II) USE OF CASH COLLATERAL, (III) GRANTING SECURITY INTERESTS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF

THIS MATTER, having come before the Court on June ___, 2016 upon the motion of the Debtor (the "Motion") seeking interim approval of a post-petition financing arrangement between Louisiana Crane Co., L.L.C. (the "Debtor") and Amegy Bank Business Credit, a division of ZB, N.A. ("Amegy" or "Secured Party"), pursuant to sections 105, 361, 362, 363(c), 364, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), whereby the Debtor seeks authorization to : (a) continue operating under the pre-petition factoring agreement on a post-petition basis (in that regard, all Financing Documents (defined below) shall be deemed effective and enforceable on a post-petition basis against the Debtor and related parties), (b) use cash collateral as referenced below (as defined in Section 363(a) of the Bankruptcy Code, all of which cash collateral is presently subject to security interests and rights of setoff claimed by the Secured Party that secure the pre-petition liabilities, direct and contingent, and indebtedness of Debtor to Secured Party), (c) grant certain replacement, substitute and/or additional liens, security interests and other relief for the benefit of the Secured

EXHIBIT 4

Party with respect to certain cash collateral on deposit or to be deposited in one or more depository accounts maintained under the control of the Secured Party, and (d) grant post-petition liens and security interests in the property of the estate and other rights to secure payment of the Obligations (defined below) incurred by Debtor under the financing arrangements with the Secured Party. It appearing that the immediate entry of this Order is essential to the continued orderly operation of the Debtor's business and is in the best interest of the Debtor and the Debtor's estate, the following findings of fact are made by the Court:

## FINDINGS OF FACT

1.      On June ___, 2016 (the "Petition Date"), the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code. The Debtor has continued to operate its business as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

2.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014.

3.      The Debtor has provided notice of the Motion and the interim hearing on the Motion via telephone, hand delivery, electronic transmission, or overnight mail to (i) the U.S. Trustee, (ii) the holders of the 20 largest unsecured claims against the Debtor; (iii) the Debtor's prepetition lenders; (iv) counsel to the Secured Party; (v) the United States Attorney's Office for the Western District of Louisiana; (vi) the Internal Revenue Service; (vii) all known parties asserting a lien against the Collateral (defined below); and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the

Debtor of the Motion, the relief requested therein and the hearing on the Motion constitutes appropriate, due, and sufficient notice thereof and complies with Bankruptcy Rules 2002 and 4001 and the Local Bankruptcy Rules, and no further notice of any of the foregoing is necessary or required.

4.     Upon information and belief, the Internal Revenue Service may hold a tax lien in the amount of approximately $8,000,000 plus penalties and interest, attaching, at least potentially, to the Debtor's pre-petition cash or receivables.

5.     The Debtor admits, stipulates, and agrees that, as of the Petition Date, pursuant to that Purchase and Sale Agreement/Security Agreement dated February 10, 2010 made by and among the Debtor and the Secured Party, subject to and including that Amendment to Purchase and Sale Agreement/Security Agreement (Changing Name of Seller) dated May 7, 2012 (the "First Amendment"), that Second Amendment to Purchase and Sale Agreement/Security Agreement (Adding New Seller) dated June 23, 2016 (the "Second Amendment"), and that Amendment to Purchase and Sale Agreement/Security Agreement dated June 23, 2016 (the "Third Amendment") (together with the First Amendment, the Second Amendment, the Third Amendment and all future amendments, the "Agreement"), the Secured Party made advances of money to the Debtor, and that, as of the Petition Date, the aggregate amount of the Agreement due and payable by the Debtor to the Secured Party under the Agreement, equaled approximately $5,857,107.12 (the "Pre-petition Factoring Amount").

6.     The Debtor further admits, stipulates, and agrees that, as of the Petition Date, pursuant to that Commercial Card Program dated June 1, 2011 between Amegy Bank and Louisiana Crane Co., L.L.C. (the "Pre-petition Credit Card Agreement"), the Debtor is indebted to the Secured Party in the approximate amount of $230,104.00. Pursuant to that Amendment to Commercial Card Program Master Agreement dated April 11, 2016 (the "Prepetition Credit Card

- 3 -

Agreement Amendment") the Debtor pledged a certificate of deposit as collateral for the Prepetition Credit Card Agreement. As of the Petition Date, the certificate of deposit had a value of $250,000.00.

7.     The Debtor further admits, stipulates, and agrees that, pursuant to that Guaranty dated August 17, 2012 (the "Liquid Services Guaranty") the Debtor agreed to guarantee the obligations of a non-debtor affiliated entity, Louisiana Liquid Services, L.L.C. ("Liquid Services"), including, without limitation, Liquid Services' obligations under that Security Agreement and Promissory Note dated January 24, 2014 (the "Liquid Services Equipment Note"). As of the Petition Date, the amount owed by Liquid Services under the Liquid Services Equipment Note was approximately $182,056.51.

8.     The Debtor further admits, stipulates, and agrees that pursuant to the Agreement, the Debtor granted Secured Party a first priority lien on, and first priority security interest in, all right, title, and interest in such Debtor's accounts receivable, inventory, contracts, notes, drafts, acceptances, instruments, chattel paper, general intangibles, documents, money, deposit accounts, payment intangibles, commercial tort claims, returned or repossed goods, certificates of deposit and proceeds thereof, in each case whether now existing or thereafter acquired, in each case, to the extent provided for in the Agreement (the "Collateral"). The Debtor further admits, stipulates, and agrees that the Secured Party has properly perfected its security interests in, and liens upon, the Collateral.

9.     The Collateral also includes "cash collateral" as defined by Section 363 of the Bankruptcy Code, all deposits subject to setoff and cash arising from the collection or other conversion to cash of property of Debtor in which the Secured Party has a security interest or lien, whether those security interests or liens existed as of the commencement of these proceedings or arise thereafter pursuant to this Order, and whether the property converted to cash

– 4 –

existed as of the commencement of these proceedings or arose or was generated thereafter (the "Cash Collateral").[1]

10. The pre-petition obligations arising from, and related to, the Agreement, the Liquid Services Guaranty, the Liquid Services Equipment Note and the Prepetition Credit Card Agreement (collectively referred to herein as the "Pre-petition Obligations") constitute the legal, valid, and binding obligation of the Debtor, enforceable against it in accordance with the terms of the Agreement (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code). No portion of this claim or any payment on account thereof is subject to avoidance, recharacterization, recovery, reduction, subordination, disallowance, impairment, or any other challenges pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and the Debtor does not have, hereby forever releases, and is forever barred from bringing any "claims" (as such term is defined in the Bankruptcy Code), counterclaims, cross claims, causes of action, defenses, recoupment, or setoff rights, whether arising under the Bankruptcy Code or otherwise, against Secured Party whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance, or other claim arising under the Bankruptcy Code or otherwise.

11. The Debtor further admits, stipulates, and agrees that, as of the Petition Date, the Pre-petition Obligations constitute an allowed secured claim within the meaning of section 506 of the Bankruptcy Code in unpaid principal plus attorneys' fees and related expenses, and other charges owing in respect thereof, and that the Debtor has waived and released any right it may have to challenge any of the Pre-petition Obligations and the security therefor, and any payments on account of Pre-petition Obligations received by the Secured Party prior to the Petition Date

---

[1] As of the Petition Date, pursuant to that ZB, N.A. Deposit Account Agreement effective January 2016 (the "Prepetition Deposit Account Agreement"), the Debtor had $150,612.94 deposited into account no. ******0923.

were on account of amounts in respect of which the Secured Party were oversecured, were payments out of the Secured Party's collateral, and that such payments did not diminish the property available for distribution to unsecured creditors.

12. The Debtor further admits, stipulates, and agrees that: (a) pursuant to that Guaranty dated February 9, 2010, Joseph Earl Toups (the "Toups Agreement") guaranteed repayment of the obligations of Debtor under the Agreement, (b) pursuant to that Guaranty dated February 9, 2010, Fournerat & Toups Farms, L.L.C. (the "Fournerat Agreement") guaranteed repayment of the obligations of Debtor under the Agreement, (c) pursuant to that Guaranty dated February 10, 2010, Logan Cass Fournerat (the "Logan Agreement") guaranteed repayment of the obligations of Debtor under the Agreement, and (d) pursuant to that Guaranty dated June 23, 2016, Louisiana Liquid Services, L.L.C. (the "LA Liquid Agreement," the Toups Agreement, the Fournerat Agreement, the Logan Agreement and the LA Liquid Agreement collectively referred to as the "Guaranty Agreements") guaranteed repayment of the obligations of Debtor under the Agreement.

13. The Secured Party has indicated a willingness to continue providing financing to the Debtor on a post-petition basis, subject to the terms of the Agreement.[2] In that regard, on a post-petition basis, the Debtor has offered to assign its pre-petition and post-petition accounts receivable to the Secured Party under the Agreement, and the Secured Party has agreed to purchase accounts from the Debtor pursuant and subject thereto. Good cause has been shown for the entry of this Order, including immediate and irreparable harm the estate will suffer if relief is not immediately granted.

14. The Debtor is unable to obtain sufficient financing on more favorable terms from

---

[2] The Debtor will address the post-petition use of the Pre-Petition Credit Card Agreement and the pre-petition deposit account through separate motions filed with the Court.

sources other than the Secured Party under the Agreement and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Debtor granting to the Secured Party, the Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and in the Agreement. The only available source of secured credit available to the Debtor is the Cash Collateral that Debtor is permitted to use under the Agreement and this Order.

15.    All credit extended and advances made to the Debtor by the Secured Party in connection with the Agreement shall be and hereby are deemed to have been extended in good faith, within the meaning of 11 U.S.C. § 364(e).

16.    The Agreement provides a vital source of working capital for the Debtor, is in the best interests of the Debtor and its estate, and is necessary to the preservation and maintenance of the going concern value of the Debtor's estate and to a successful reorganization of the Debtor.

17.    The Secured Party is only willing to provide financing on a post-petition basis under the terms of the Agreement, and is willing to consent to the use of its Cash Collateral, subject to the terms and conditions set forth in the Agreement and the provisions of this Order, as applicable, and provided that the Liens, the Superpriority Claims, (as defined below) and other protections granted by this Order and the Agreement will not be affected by any subsequent reversal or modification of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

18.    The Agreement has been negotiated in good faith and at arm's length among the Debtor and the Secured Party, and the terms of the Agreement and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtor's exercise of

- 7 –

prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

19. The Secured Party is willing to provide post-petition financing for Debtor, in Secured Party's discretion, by purchasing eligible accounts receivable of the Debtor (pursuant to the terms of the Agreement), but only if the Pre-petition Obligations are allowed to be paid in full from the post-petition proceeds of the Collateral, and only upon the terms and conditions and with the protections provided herein and in the Agreement. The Secured Party is relying on such terms, conditions and protections in agreeing to provide post-petition financing. It is necessary and appropriate that property of the estate secure repayment of all the Obligations (defined below), which includes all Pre-petition Obligations as well as Post-petition Obligations.

20. The Debtor has requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(1) and 4001(c)(1). The authorization granted herein on an interim basis to use Cash Collateral and to enter into the Agreement is necessary to preserve the going concern value of the Debtor and its estate. Absent granting the relief set forth in this Order, the Debtor's estate will be immediately and irreparably harmed. Consummation of the Agreement and the use of Cash Collateral in accordance with this Order and the Agreement are therefore in the best interests of the Debtor and its estate and creditors.

<u>ORDER</u>

**BASED ON THE FOREGOING FINDINGS, IT IS NOW THEREFORE ORDERED AS FOLLOWS:**

1. All capitalized terms used in this Order not otherwise defined herein and unless otherwise indicated shall have the meaning given them in the Agreement.

2. The Motion hereby is GRANTED on an interim basis as set forth herein.

3. All findings of fact (and stipulations, admissions and acknowledgments made by

- 8 -

the Debtor) referenced herein are incorporated into this Order and made a part of this Order.

4.      The Debtor is authorized and empowered, effective immediately, to operate under the Agreement on a post-petition basis, including, without limitation, administering the sale of its accounts receivable to the Secured Party, and to otherwise operate pursuant to, and in accordance with, the terms and conditions of the Agreement. In that regard, the Agreement and all documents including, without limitation, the Pre-petition Credit Card Agreement, the Pre-petition Credit Card Amendment, the Liquid Services Guaranty, the Liquid Services Equipment Note and the Guaranty Agreements (these documents together with the Agreement are collectively referred to as the "Financing Documents"), and all Obligations arising therefrom or related thereto, hereby are deemed to be valid and binding obligations which are enforceable against the Debtor and all related parties (as identified in the Financing Documents) in favor of the Secured Party.

5.      The Debtor is authorized and empowered, effective immediately, to sell and assign its accounts receivable to the Secured Party on a post-petition basis pursuant to section 363 of the Bankruptcy Code, subject to the terms of the Agreement, and to execute all documents, to the extent necessary, and take all actions in connection with, and in furtherance of, all undertakings and obligations under the Agreement.

6.      The Debtor is authorized and empowered to incur secured obligations and indebtedness to the Secured Party pursuant to this Order and the Agreement in such amounts as authorized in the attached budget (the "Budget") which includes expenditures incurred in the ordinary course of its business. Debtor's use of the proceeds of such indebtedness shall not affect the rights of the Secured Party hereunder.

4.      The proceeds of any advance from Secured Party shall not be used either: (a) in connection with the investigation, assertion, commencement or continuation of any action or

claim against the Secured Party, or (b) to object to or contest, or raise any defenses to the validity, perfection, priority or enforceability of any rights or claims of the Secured Party.

5.        Pursuant to sections 364 (c)(1), 364(c)(2), and (c)(3) and (d)(1) of the Bankruptcy Code (without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements, or otherwise), Secured Party is hereby granted a validly perfected, enforceable and non-avoidable first priority security interest in, and lien on, all assets (tangible, intangible, real, personal and mixed, including, without limitation, the Collateral described in the Agreement) of the Debtor, whether now owned or hereafter acquired (the "Liens"), as collateral for all present and future obligations of the Debtor to Secured Party, whether arising under the Agreement or otherwise, and whether incurred pre-petition or post-petition, including, without limitation, Secured Party's attorney's fees and expenses incurred in connection with, or related to, the negotiation, documentation and enforcement of the Agreement or the preservation and protection of Secured Party's rights thereunder and in connection with this Bankruptcy Case (the "Post-petition Obligations") (the Pre-petition Obligations and the Post-petition Obligations are collectively referred to as the "Obligations").

6.        The Liens granted herein in favor of the Secured Party shall be, and remain, senior to any present or future federal tax liens, state tax liens or obligations, any present or future claims by judgment creditors, and any future setoff claims made by any governmental entity as an account debtor for the Debtor. The Debtor is authorized and shall make all transfers to Secured Party for chargebacks, payments or other transfers arising under the Agreement, and such payments and transfers shall be non-avoidable.

7.        Secured Party shall have the express right of setoff and recoupment against the Rebates and the Reserve Account (both described in the Agreement), whether created from pre-petition or post-petition funds, as security for the payment and performance of the Obligations.

8.     No other claim or lien having a priority superior to or *pari passu* with any of the Liens shall be granted while any of the Obligations remain outstanding.

9.     The Obligations owing by the Debtor to Secured Party shall constitute obligations that are valid, binding, and enforceable against the Debtor and its bankruptcy estate in accordance with their terms.

10.     In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Debtor's performance of its obligations under the Agreement, including, without limitation: (i) the execution, delivery and performance of the Agreement and any other documents associated with the extension of postposition financing, any mortgages contemplated thereby and any exhibits attached thereto, (ii) the payment to the Secured Party of the fees referred to in the Agreement and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the Agreement; and (iii) the performance of all other acts required under or in connection with the Agreement.

11.     The automatic stay provisions of Section 362 of the Code are hereby modified and terminated with respect to the Secured Party, to the extent necessary to implement the provisions of this Order and any agreements executed by Debtor pursuant to this Order, thereby permitting the Secured Party, inter alia, (a) to receive collections of Collateral; (b) to file any financing statements or other instruments and documents, if any, evidencing its security interests in, and Liens on, the Collateral; (c) to charge any fees and interest accruing under or pursuant to this Order, the Agreement, or any agreements executed by Debtor pursuant to this Order; and (d)

- 11 -

to take any or all of the actions permitted by this Order or by the Agreement, or any agreements executed by Debtor pursuant to this Order, in the event of a Default or termination under any of those agreements; provided, however, that the Secured Party shall provide at least five (5) days prior "Notice" of the Secured Party's intent to take any such action described in clause (d) of this paragraph, to: (i) the Debtor; (ii) counsel for Debtor; (iii) counsel, if any, for the Creditors' Committee (or in lieu thereof to a designated representative of that Committee, if any); and (iv) to the United States Trustee.

12.     So long as the Obligations remain unpaid, the Debtor irrevocably waives any right, without the Secured Party's prior written consent: (a) to grant or impose, or request that the Court grant or impose, under Section 364 of the Code or otherwise, liens or security interests on any Cash Collateral, whether equal, superior, or subordinate to the Secured Party's liens and security interests on that property; or (b) to seek authority to use the Cash Collateral in any manner other than is described in this Order.

13.     The Secured Party is authorized to collect upon, convert to cash, and enforce checks, drafts, instruments, and other forms of payment now or hereafter coming into its possession that represents the Collateral or proceeds of collection of the Collateral, and to apply all proceeds of collections of the Collateral and all other Cash Collateral now or hereafter coming into the Secured Party's possession (including pre-petition and post-petition accounts receivable of Debtor) to any of the Obligations (including, Pre-petition Obligations), in its sole discretion.

14.     Unapplied proceeds or payments of the Collateral received as of the Petition Date by the Secured Party shall be applied to the Pre-petition Obligations, including all accrued and accruing interest, fees and expenses payable (at the rates, and to the extent set forth in the Agreement, and to the extent applicable) with respect to the Pre-petition Obligations as provided

- 12 –

in this Order.

15. All proceeds of the Collateral (including pre-petition and post-petition accounts receivable of Debtor) received by the Secured Party in any of the Debtor's lock box accounts held at Amegy, or otherwise, after the Petition Date shall be applied to pay the Obligations (as directed by the Secured Party, in its sole discretion), including all accrued and accruing fees, charges, discounts and interest payable in the amounts, at the rates and in the manner set forth in the Agreement.

16. The Secured Party hereby is granted a super-priority administrative expense claim under section 364(c)(1) of the Bankruptcy Code and as provided for in section 507(b) of the Bankruptcy Code on account of, and with respect to, all the Obligations, which shall be deemed allowed, without any further filing by the Secured Party, and which shall have priority over any and all administrative expenses of the kind specified in sections 105,326, 328, 330, 331, 503, 507(b), 726, 1113 or 1114 of the Bankruptcy Code, except with respect to the carve out for the United States Trustee's entitlement and priority to collect any and all statutory fees during the pendency of this chapter 11 proceeding ("Carve Out").

17. To the extent that the Debtor may become indebted to any governmental entity, whether for payroll or other taxes or otherwise, and said governmental entity is also an account debtor of the Debtor, the governmental entity's right of setoff, defense, counterclaim or recoupment, if any, shall be subordinate to the rights of the Secured Party with respect to accounts receivable owing to the Debtor which comprise a portion of the Collateral, and the governmental entity shall pay the amount owing on the account receivable free of any claim of setoff or recoupment.

18. The Liens granted to the Secured Party herein are deemed validly granted, duly attached, and properly perfected, without the need of any additional actions being taken by or on

behalf of the Secured Party, including without limitation, the filing or recording of Uniform Commercial Code financing statements; provided, however, that in the event the Secured Party does make such a filing or recordation, the Debtor shall execute all documents required by the Secured Party to do so. A certified copy of the Order may, in the discretion of the Secured Party, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the Order for filing and recording. For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to permit the Secured Party to take all actions, as applicable.

19.     Secured Party will not be required to file proofs of claim in the Debtor's case in respect of any claims arising under or related to the Obligations, the Liens, the Agreement or the Super-priority Claims. The Debtor's stipulations and admissions contained in this Order shall be deemed to constitute a timely proof of claim for the Secured Party upon approval of this Order, and the Secured Party shall be treated under section 502(a) of the Bankruptcy Code as if the Secured Party has filed a proof of claim and shall have an allowed claim with respect to the Obligations for the purposes of credit bidding. Nothing in this paragraph shall waive, alter, or modify the Secured Party's right to file, amend, and/or supplement, in its sole discretion, a proof of claim(s) in the Debtor's bankruptcy case for any claim allowed herein.

20.     The Debtor shall be authorized to sell and assign to Secured Party (i.e. factor) the Debtor's Pre-Petition and Post-Petition accounts receivable and to execute all documents in connection with and in furtherance of the Agreement, and the Secured Party shall be permitted to make advances to Debtor. All of Debtor's accounts receivable which are factored with the Secured Party shall be deemed sold to and all ownership rights in all newly created accounts

- 14 -

receivable shall be transferred to Secured Party free and clear of any liens, claims and encumbrances pursuant to the terms of the Agreement, and when purchased from Debtor shall not constitute property of the Debtor's estate.

21.     Nothing in the Agreement, or in any of the documents executed in connection therewith or this Order, shall give this Court the authority to require the Secured Party to purchase accounts receivable from the Debtor or make advances therefor, such being in the sole discretion of the Secured Party in the exercise of its reasonable sole credit or business judgment.

22.     The terms and conditions of the Agreement have been negotiated in good faith and at arm's length by all parties involved.  Accordingly, the financing provided pursuant to the Agreement shall be deemed to be extended in good faith as that term is used in section 364(e) of the Bankruptcy Code.  The Secured Party is hereby afforded the protection of § 364(e) of the Bankruptcy Code with regard to the reversal or modification on appeal of this Order, or to the modification, vacating, or other amendment of this Order by this Court.

23.     The Debtor shall comply with all provisions of the Agreement.

24.     To the extent that any provision of the Agreement shall cause the Debtor to be in default thereunder solely as a result of it being subject to the Bankruptcy Code or it being insolvent, said provisions are waived by the Secured Party.

25.     The Debtor shall not grant to any person, entity or party any interest in the Collateral or priority in payment prior to or equal with the lien or priority in payment hereby being accorded to the Secured Party.

26.     The entry of this Interim Order and execution, delivery, and performance under the Agreement, or under any other documents executed in connection therewith, do not constitute a compromise, waiver, or other relinquishment of any right of the Secured Party at law, in equity or otherwise, including, without limitation, any right of the Secured Party to

- 15 -

request and to obtain relief under the Bankruptcy Code.

27.     The Debtor may use the Secured Party's "cash collateral" as such term is defined in section 363(a) of the Bankruptcy Code, including, without limitation, any accounts receivable and general intangible and any other cash or right that would be included in such definition of "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code), without the additional prior written consent of the Secured Party in accordance with the approved Budget attached hereto or as may be further permitted by Order of this Court after notice and hearing. Such right shall terminate automatically upon the earliest of (x) July ___, 2016 and (y) five (5) Business Days' written notice provided by the Secured Party to the U.S. Trustee, the Debtor, any appointed committee, or provided by the Debtor to the Secured Party, through their respective counsel, of the occurrence and continuance of any event of default under the Agreement or this Order.  To avoid doubt, the use of cash collateral is permitted up to the full extent of the Carve Out, defined herein as the amounts necessary to pay all United States Trustee quarterly fees and statutory expenses of the Clerk of Court.

28.     The Secured Party is entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interest in the Collateral, including Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Secured Party's interest in the Collateral, resulting from the sale, lease or use by the Debtor (or other decline in value) of Cash Collateral and any other Collateral.  As additional adequate protection (but not necessarily as adequate protection), (A) the Secured Party shall maintain security interests in, and liens upon, all of the Collateral on account of the Obligations, (B) is hereby granted (effective and perfected upon the date of this Order without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in, and lien upon, all the Collateral, subject only to

- 16 -

the Carve-Out, and (C) is hereby granted, subject to the payment of the Carve-Out, a super-priority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code on account of, and with respect to, all Obligations, which shall be deemed allowed, without any further filing by the Secured Party, and which shall have priority over any and all administrative expenses of the kind specified in sections 105,326, 328, 330, 331, 503, 507(b), 726, 1113 or 1114 of the Bankruptcy Code.

29.    The Debtor will not seek to surcharge the Secured Party or the Collateral with any expense of the type described in sections 506(c) or 552(b) of the Bankruptcy Code unless it obtains Secured Party's prior written consent to the incurrence of such expenses.    The Agreement is enforceable according to its terms and nothing contained therein is unlawful, unenforceable or violative of any usury or similar statute.

30.    The provisions of the Order and the Agreement shall survive entry of any order that may be entered converting or dismissing the case, and the Claims and Liens granted herein shall maintain their priority and validity against the Debtor and its bankruptcy estate, as provided herein.

31. An event of default under this Order ("Default") shall include the following:

   a.  the Debtor's failure to perform or comply with any of the material terms, conditions, or covenants of this Order;

   b.  the Debtor's failure to perform or comply with any of the terms, conditions, or covenants of the Agreement;

   c.  the termination of this Order by its own terms, operation of law or court order;

   d.  the dismissal of this Bankruptcy Case;

   e.  the appointment of a trustee under the Bankruptcy Code;

   f.  any material deviation from the Budget unless approved by the Secured Party;

- 17 –

g. the conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code.

h. any sale by the Debtor of the Collateral outside the ordinary course of business, and other than on the terms and conditions of this Order or pursuant to the terms and provisions of the Bankruptcy Code.

i. Debtor's failure to pay, when due, any post-petition taxes unless such taxes are the subject of a bona fide dispute.

j. Any warranty or representation made by Debtor to the Secured Party, or any financial statement or other documents heretofore or hereafter delivered to the Secured Party, shall prove false or misleading in any material respect.

k. The occurrence of any other Event of Default as provided in either the Agreement or the Agreement, as modified by this Order, subject to cure periods (if any) that exist in the either agreement.

l. Debtor's failure to pay when due all payments to the Secured Party as provided in either the Agreement as modified by this Order.

m. The automatic stay imposed by section 362 of the Bankruptcy Code with respect to any of the Collateral or Cash Collateral is modified or terminated without the Secured Party's written consent.

32.    Upon the occurrence of a Default, Secured Party shall provide written notice to the U.S. Trustee, the Debtor, any appointed committee, of the occurrence and continuance of any Event of Default. If the Debtor fails to cure the Default within five (5) business days from the time of service of such notice of the Default, the Debtor shall hold and segregate all Cash Collateral in trust for the Secured Party and the rights and obligations created under this Order shall cease immediately without further Order from this Court.

33.     As additional protection to the Secured Party (but not necessarily as adequate protection), Debtor shall (a) provide the Secured Party with access to their books and records upon request during normal business hours and shall allow the Secured Party to inspect, review, and photocopy the same upon request; (b) provide to the Secured Party, on each business day, a complete listing and itemization, in detail acceptable to the Secured Party, identifying by category all receipts for the immediately preceding business day; (c) provide to the Secured Party, upon request, all written documents and other information available to Debtor respecting the Collateral; (d) permit the Secured Party or its representatives, appraisers, accountants, and other professionals and experts, upon request, to count, inspect and photograph Collateral, and for such purposes to enter and remain upon any premises occupied by Debtor; and (e) comply in all respects with the provisions of the Lender Agreements, except for the provisions thereof requiring the timing of the payment of money to Lender and except for the financial covenants set forth therein.

34.     The stipulations and admissions contained in this Order shall be binding in all circumstances upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtor), the Debtor's estate, and all parties in interest, including, without limitation, any committee appointed at a later date.

35.     Upon entry of this Order, the Secured Party, shall have the right to credit bid up to the full amount of the Liens or the Obligations in connection with any sale of the Collateral conducted (i) pursuant to a plan of reorganization subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code or (ii) pursuant to section 363 of the Bankruptcy Code.

36.     This Order is without prejudice to the Secured Party's rights to pursue any and all rights and remedies under the Bankruptcy Code, the Agreement, and any other applicable

agreement or law, including without limitation, to seek an injunction and/or to object to applications for allowance and/or payment of compensation of professionals employed by the Debtor or its estate.

37.     The entry of this Order and execution, delivery and performance under the Agreement, or any other documents executed in connection therewith or herewith do not constitute a compromise, waiver, or other relinquishment of any right of the Secured Party at law, in equity or otherwise, including any right of the Secured Party to request and to obtain relief under the Bankruptcy Code.

38.     This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

39.     In the event of any inconsistency between the provisions of this Order and the provisions of the Agreement and any documents and instruments executed in connection therewith, the provisions of this Order shall govern. The Debtor and Secured Party are hereby authorized to make any nonmaterial amendments, modifications or waivers to the Agreement and the other related documents without notice or further order of the Court and are authorized to execute any additional agreements necessary to document such amendments, modifications or waivers. The Debtor and Secured Party are permitted to make non-material amendments without further court order.

40.     A final hearing on the Motion shall be held on August __, 2016, at _:__ p.m., prevailing Central Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _____ __, 2016, and shall be

served on: (i) the Debtor and its counsel, (ii) the Secured Party and its counsel, (iii) the Office of the United States Trustee, (iv) the Internal Revenue Service, and (v) any party claiming a lien on the Collateral.

* * *

RESPECTFULLY SUBMITTED:

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.

  /s/ Michael A. Crawford
Brett P. Furr (#17,572)
Michael A. Crawford (#22315)
Post Office Box 2471
450 Laurel Street, 8th Floor
Baton Rouge, Louisiana 70821-2471
(225) 381-0201 Tel.
(225)346-8049 Fax
*Proposed Special Counsel for Debtor*

**Louisiana Crane & Construction, LLC**
**13 week Cash Flow Projections**

| | Week Ending 7/3/2016 | Week Ending 7/10/2016 | Week Ending 7/17/2016 |
|---|---|---|---|
| **Opening Cash Balance** | 82,864.19 | 201,114 | 324,364 |
| | | | |
| **Cash Sources** | | | |
| Billable Revenue | 675,000 | 675,000 | 675,000 |
| 85%Funding of Billable Revenue | 573,750 | 573,750 | 573,750 |
| Cash Reserve from collections | 180,000 | 190,000 | 190,000 |
| | | | |
| **Total Sources** | 753,750 | 763,750 | 763,750 |
| | | | |
| **Cash Uses** | | | |
| Payroll | 400,000 | 400,000 | 390,000 |
| Payroll Taxes | 28,000 | 28,000 | 27,300 |
| Employee Per diem | 15,000 | 15,000 | 15,000 |
| Fuel | 23,500 | 23,500 | 23,500 |
| Insurance | 75,000 | 75,000 | 50,000 |
| Lease payments | 20,000 | 20,000 | 20,000 |
| Utilities | 5,000 | 5,000 | 5,000 |
| Utility Deposit | | | |
| Critical vendor Pre Petition | 15,000 | 15,000 | 15,000 |
| Employee Benefits | 15,000 | 20,000 | 20,000 |
| Repair & Maintanence | 8,100 | 8,100 | 8,100 |
| Permits | 1,800 | 1,800 | 1,800 |
| Travel | 6,300 | 6,300 | 6,300 |
| Safety/Drug Testing | 2,700 | 2,700 | 2,700 |
| Materials | 7,200 | 7,200 | 7,200 |
| Miscellaneous/office | 12,900 | 12,900 | 12,900 |
| Adequate Protection Payments | | | |
| Administrative & Professional fees | | | |
| US Trustee fees | | | |
| | | | |
| **Total Uses** | 635,500 | 640,500 | 604,800 |
| | | | |
| **Closing Cash Balance** | 201,114 | 324,364 | 483,314 |

| Week Ending 7/24/2016 | Week Ending 7/31/2016 | Week Ending 8/7/2016 | Week Ending 8/14/2016 | Week Ending 8/21/2016 | Week Ending 8/28/2016 |
|---|---|---|---|---|---|
| 483,314 | 373,264 | 434,664 | 536,064 | 643,014 | 539,964 |
| | | | | | |
| 675,000 | 725,000 | 725,000 | 725,000 | 725,000 | 600,000 |
| 573,750 | 616,250 | 616,250 | 616,250 | 616,250 | 510,000 |
| 150,000 | 125,000 | 125,000 | 125,000 | 115,000 | 115,000 |
| | | | | | |
| 723,750 | 741,250 | 741,250 | 741,250 | 731,250 | 625,000 |
| | | | | | |
| 390,000 | 405,000 | 405,000 | 400,000 | 400,000 | 350,000 |
| 27,300 | 28,350 | 28,350 | 28,000 | 28,000 | 24,500 |
| 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 22,000 |
| 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | 20,000 | | | | |
| 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 11,000 |
| 20,000 | 20,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| 10,600 | 10,600 | 10,600 | 10,600 | 10,600 | 9,700 |
| 1,800 | 1,800 | 1,800 | 1,600 | 1,600 | 1,600 |
| 6,300 | 6,300 | 6,300 | 6,300 | 6,300 | 5,600 |
| 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 2,900 |
| 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 7,400 |
| 12,900 | 12,900 | 12,900 | 12,900 | 12,900 | 12,900 |
| 200,000 | | | | 200,000 | |
| 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| | 10,000 | | | | |
| | | | | | |
| 833,800 | 679,850 | 639,850 | 634,300 | 834,300 | 572,600 |
| | | | | | |
| 373,264 | 434,664 | 536,064 | 643,014 | 539,964 | 592,364 |

| Week Ending 9/4/2016 | Week Ending 9/11/2016 | Week Ending 9/18/2016 | Week Ending 9/25/2016 |
|---|---|---|---|
| 592,364 | 650,364 | 708,364 | 566,364 |
| | | | |
| 600,000 | 600,000 | 600,000 | 600,000 |
| 510,000 | 510,000 | 510,000 | 510,000 |
| 120,000 | 120,000 | 120,000 | 100,000 |
| | | | |
| 630,000 | 630,000 | 630,000 | 610,000 |
| | | | |
| 350,000 | 350,000 | 350,000 | 350,000 |
| 24,500 | 24,500 | 24,500 | 24,500 |
| 15,000 | 15,000 | 15,000 | 15,000 |
| 22,000 | 22,000 | 22,000 | 22,000 |
| 50,000 | 50,000 | 50,000 | 50,000 |
| 20,000 | 20,000 | 20,000 | 20,000 |
| 5,000 | 5,000 | 5,000 | 5,000 |
| | | | |
| 11,000 | 11,000 | 11,000 | 11,000 |
| 10,000 | 10,000 | 10,000 | 10,000 |
| 9,700 | 9,700 | 9,700 | 9,700 |
| 1,600 | 1,600 | 1,600 | 1,600 |
| 5,600 | 5,600 | 5,600 | 5,600 |
| 2,900 | 2,900 | 2,900 | 2,900 |
| 7,400 | 7,400 | 7,400 | 7,400 |
| 12,300 | 12,300 | 12,300 | 12,300 |
| | | 200,000 | |
| 25,000 | 25,000 | 25,000 | 25,000 |
| | | | 10,000 |
| | | | |
| 572,000 | 572,000 | 772,000 | 582,000 |
| | | | |
| 650,364 | 708,364 | 566,364 | 594,364 |