# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 16-50876 |
| | : | |
| LOUISIANA CRANE & | : | CHAPTER 11 |
| CONSTRUCTION, LLC | : | |
| | : | |
| DEBTOR | : | |

## AMENDED PLAN OF REORGANIZATION AS OF JUNE 6, 2017

Louisiana Crane & Construction Company, LLC, the debtor and a debtor-in-possession ("Debtor"), hereby submits the following Amended Plan of Reorganization ("Plan") for the resolution of all outstanding creditor claims. Reference is made to the Amended Disclosure Statement filed by Debtor (the "Disclosure Statement") for a discussion of the Debtor's history and results of operations. All creditors and interest holders are encouraged to consult the Disclosure Statement prior to voting on the Plan.

## I.

## DEFINITIONS AND RULES OF CONSTRUCTION

### A.  Definitions.

In addition to such other terms as are defined in other Sections of this Plan, the following terms (which appear in this Plan as capitalized terms) have the following meanings as used in this Plan.

**1.**  **"Administrative Claim"** means a claim for costs and expenses of administration of the Reorganization Case under section 503(b) of the Bankruptcy Code entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code.

**2.**  **"Affiliate"** means with regard to any Person, (a) any Person, directly or

1

indirectly, controlled by, under common control of, or controlling such Person; (b) any subsidiary of such Person or any parent entity of such Person; (c) any Person, directly or indirectly, in which such Person holds, of record or beneficially, ten percent (10%) or more of the equity or voting securities, membership interests or Membership Interests; (d) any Person which holds, directly or indirectly, of record or beneficially, ten percent (10%) or more of the equity or voting securities, membership interests or Membership Interests of such Person; (e) any Person that, through contract, relationship or otherwise, exerts a substantial influence on the management of such Person's affairs; or (f) any Person that, through contract, relationship or otherwise, is influenced substantially in the management of its affairs by such Person.

3.　　　**"Allowed Administrative Claim"** means all or that portion of an Administrative Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

4.　　　**"Allowed Claim" or "Allowed Interest"** means, respectively, except as otherwise allowed or provided for in the Plan or a Final Order of the Bankruptcy Court, a Claim or a Membership Interest, proof of which was timely and properly Filed or, if no proof of claim or proof of interest was filed, which has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which:

(a) no objection to the allowance thereof has been interposed on or before the later of: (i) the sixtieth (60th) day after the Effective Date, or (ii) the thirtieth (30th) day after proof of such Claim or Membership Interest is filed, or (iii) such other applicable period for objection as may be fixed or extended by the Bankruptcy Court after notice and hearing, or

(b) any objection thereto has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

Unless otherwise specified herein or by order of the Bankruptcy Court, an "Allowed Claim" shall not include any interest, fees, costs or other charges on such Claim

{00356096-37}

accruing after the Petition Date.

5.　　　**"Amegy"** shall mean Amegy Bank Business Credit, a division of ZB, N.A.

6.　　　"**Amegy Collateral**" shall mean the Debtor's accounts receivable, and other assets on which Amegy has a first priority lien on, and first priority security interest in, all right, title, and interest in such as detailed in the Purchase and Sale Agreement/Security Agreement dated February 10, 2010 made by and among the Debtor and the Amegy, subject to and including that Amendment to Purchase and Sale Agreement/Security Agreement (Changing Name of Seller) dated May 7, 2012 (the "First Amendment"), that Second Amendment to Purchase and Sale Agreement/Security Agreement (Adding New Seller) dated June 23, 2016 (the "Second Amendment"), and that Amendment to Purchase and Sale Agreement/Security Agreement dated June 23, 2016 (the "Third Amendment").

7.　　　"**Amegy DIP Order**" shall mean that Final Order (I) Approving Senior Secured Super-priority Post-Petition Financing Arrangement, (II) Use Of Cash Collateral, (III) Granting Security Interests And Super-Priority Administrative Expense Treatment, and (IV) Modifying The Automatic Stay entered by the Court on or about August 29, 2016 [Dkt No. 239].

8.　　　"**Amegy Financing Documents**" shall mean collectively, the First Amendment, the Second Amendment, the Third Amendment, the Commercial Card Program dated June 1, 2011 between Amegy Bank and Louisiana Crane Co., L.L.C. (the "Pre-petition Credit Card Agreement"), that Amendment to Commercial Card Program Master Agreement dated April 11, 2016 (the "Pre-petition Credit Card Agreement Amendment"), the Guaranty dated August 17, 2012 whereby the Debtor agreed to guarantee the obligations of a non-debtor affiliated entity, Louisiana Liquid Services, L.L.C. (the "Liquid Services Guaranty"), that Security Agreement and Promissory Note dated January 24, 2014 (the "Liquid Services Equipment Note"), that Guaranty dated February 9, 2010, Joseph Earl Toups (the "Toups Agreement"), that Guaranty dated February 9, 2010, Fournerat & Toups Farms, L.L.C. (the

{00356096-37}

"Fournerat Agreement"), that Guaranty dated February 10, 2010, Logan Cass Fournerat (the "Logan Agreement"), and that Guaranty dated June 23, 2016, Louisiana Liquid Services, L.L.C.

**9.**      **"Amortization Period"** unless otherwise stated in the Plan shall mean twenty (20) years.

**10.**      **"Avoidance Actions"** means all of the Debtor's and the Estate's rights and claims under sections 541 through 553 of the Bankruptcy Code, inclusive, or under any similar or related state or federal statute or common law, whether or not an action is initiated on or before the Effective Date.

**11.**      **"BOA"** means Bank of America Leasing.

**12.**      **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Louisiana, or, in the event such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Western District of Louisiana.

**13.**      **"Bankruptcy Rules"** means collectively, the (a) Federal Rules of Bankruptcy Procedure, and (b) Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

**14.**      **"Cash"** means cash or cash equivalents.

**15.**      **"Caterpillar"** shall mean Caterpillar Financial Services.

**16.**      **"Central"** shall mean Central Bank of St. Louis.

**17.**      **"Cerny"** shall mean Cerny Real Estate Interests.

**18.**      **"Citizens"** shall mean Citizens Bank.

**19.**      **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

**20.**      **"Class 2"** shall mean state and local taxing authorities that do not possess a secured claim.

21. **"Class 17 Excess Payment"** shall mean in any calendar year eight and one-half percent (8.5%) of the Debtor's revenue for any calendar year minus the greater of $39,000,000.00 or the Debtor's highest revenue for any calendar year after the Effective Date.

22. **"Commencement Date"** shall mean when all conditions for the Effective Date shall have occurred but no later than sixty (60) days after the Effective Date and Plan provisions commence.

23. **"Community"** shall mean Community Bank.

24. **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

25. **"Confirmation Hearing"** means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of the Plan, including any continuances thereof.

26. **"Confirmation Order"** means the order of the Bankruptcy Court entered following the Confirmation Hearing that confirms the Plan.

27. **"Debtor in Possession"** means the Debtor between the Petition Date and the Effective Date when acting in the capacity of representative of its Estate in the Reorganization Case.

28. **"DeLage"** shall mean DeLage Landen Financial Services, Inc.

29. **"Deed of Trust or Mortgages"** means the Deed of Trust in favor of any Secured Lender.

30. **"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any

{00356096-37}

portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

31. **"Disallowed Interest"** means an equity interest in the Debtor that has been disallowed by Final Order or a settlement.

32. **"Disbursing Agent"** means the entity designated pursuant to this Plan to hold and distribute property under this Plan, which may be the Reorganized Debtor.

33. **"Disclosure Statement"** means the Disclosure Statement for the Debtor to accompany the Plan, as modified or amended, filed with the Bankruptcy Court.

34. **"Disputed Claim"** and **"Disputed Interest",** mean any Claim or Membership Interest, that is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest nor a Disallowed Interest, as the case may be.

35. **"Effective Date"** shall have the meaning ascribed to it in Section VI.A hereof.

36. **"Estate"** means the estate created in the Reorganization Case under section 541 of the Bankruptcy Code.

37. **"File"** or **"Filed"** means properly and timely filed with the Bankruptcy Court in the Reorganization Case, as reflected on the official docket of the Court for the Reorganization Case and served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or Order of the Court.

38. **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance

6

satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for reargument or rehearing pending; provided however that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

39.    **"Fund"** shall mean the sum of $1,500,000.00 plus interest at the rate of 6% per annum.

40.    **"Guarantors"** shall mean (i) Fournerat & Toups Farms LLC; (ii) Fournerat Family LLC; (iii) Joseph Earl Toups; (iv) LLC Equipment I LLC; (v) Logan C. Fournerat; (vi) Louisiana Aviation Co. LLC; (vii) Louisiana Liquids Services, LLC; (viii) Louisiana Properties, LLC; and (ix) Louisiana Vessel and Fabrication, LLC.

41.    **"Interest Holders"** shall mean any person, firm or entity that possesses an equity interest in the Debtor.

42.    **"Jeff Davis"** shall mean Jeff Davis Bank.

43.    **"Loan"** means the loan represented by the promissory note and the other Secured Lender Loan Documents in favor of any Secured Lender.

44.    **"Mack"** shall mean Mack Financial Services.

45.    **"Members"** mean collectively the Managing Member and other members of the Debtor.

46.    **"Membership Agreement"** means the Membership Agreement that is filed as a Plan Supplement.

47. **"Membership Interests"** means the respective legal, equitable, contractual and other rights and ownership interests of the Managing Member and the members in and with respect to the Debtor.

48. **"Mercedes"** shall mean Mercedes Benz Financial Services.

49. **"Notice of Default"** means a notice sent by a holder of a Claim or Interest of any default by the Debtor of any provisions of this Plan, which notice shall be served in accordance with Section VI(P) of this Plan.

50. **"Peoples"** shall mean Peoples United Equipment Finance.

51. **"Person"** means an individual, corporation, Membership, joint venture, association, joint stock company, limited liability company, limited liability Membership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

52. **"Petition Date"** means June 27, 2016.

53. **"Plan"** means this plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

54. **"Priority Non Tax Claim"** means a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than an Administrative Claim and a tax claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

55. **"Priority Tax Claim"** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection but excluding Property Tax Claims.

56. **"Property Tax Claim"** means any tax claim held by a Governmental Unit secured by a lien against the Property.

57. **"Reorganization Case"** means this bankruptcy case under chapter 11 of the Bankruptcy Code.

8

58. **"Reorganized Debtor"** means the Debtor respectively, as revested with property of the Estate to the extent provided in this Plan on or after the Effective Date

59. **"Scheduled"** means set forth on the Schedules.

60. **"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders filed by the Debtor under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

61. **"Secured Claim"** means any claim that is secured by a valid, perfected and unavoidable lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the claimholder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, and determined under section 506 of the Bankruptcy Code.

62. **"Secured Lender Amortization"** shall mean sixty (60) months for loans secured by equipment and twenty (20) years for loans secured by real estate.

63. "**Secured Lender Loan Documents**" mean all documents evidencing the Secured Lender Loans executed by the Debtor, including, but not limited to, Notes, Deeds of Trust, Security Agreements, Mortgages, UCCs and any other document that creates or perfects a security interest in assets of the Debtor, which is executed by the Debtor in favor of the Secured Lenders (or its processors-in-interest and/or assigns), and any other documents executed by the Debtor in consummation of this Plan and/or that need to be amended and restated to conform to the terms of this Plan.

64. **" Secured Lender Plan Rate"** shall mean the lesser of five percent (5%) or the contract rate of interest between the Debtor and a secured lender.

65. **"Secured Lenders"** shall mean Central, Citizens, Community, Mack, Mercedes, Siemens, Wells Fargo, Sterling, TCF, Caterpillar, Cerny, Jeff Davis, DeLage, Peoples, Toups and Amegy.

66. **"Secured Taxing Authorities"** shall mean any taxing authority that

{00356096-37}

possesses an allowed secured claim and not a Priority Tax Claim.

67.    **"Siemens"** shall mean Siemens Financial Services, Inc.

68.    **"Sterling"** shall mean Sterling National Bank.

69.    **"TCF"** shall mean TCF Equipment Finance, Inc.

70.    **"Toups"** shall mean Earl Toups.

71.    **"Unsecured Claim"** means any claim that is not an Administrative Claim, Priority Claim, Property Tax Claim, or Secured Claim.

72.    **"Wells Fargo"** shall mean Wells Fargo Equipment Finance.

**B.    Rules of Interpretation.**

Any term used in this Plan that is not defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**C.    Rules of Construction.**

For purposes of this Plan:

1.    Whenever from the context it is appropriate, each term whether stated in the singular or the plural shall include both the singular and the plural;

2.    Any reference in the Plan to a contract, instrument, indenture, release, or other agreement or document being in a particular form or on particular terms and conditions means that such documents shall be substantially in such forms or substantially on such terms and conditions;

3.    Any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented through and including the Confirmation Date;

4.    Unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan;

5.      The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only a particular portion of the Plan;

6.      Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

7.      All Exhibits to this Plan are incorporated herein, regardless of whether or when those Exhibits are Filed; and

8.      The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

**D.      Time Periods.**

In computing any time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II.

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The following is a designation of the classes of claims and interests under this Plan.  Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following classes in accordance with section 1123(a)(1) of the Bankruptcy Code.  A claim or interest is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class and is classified in a different class to the extent that any remainder of the claim or interest qualifies within the description of such different class.

**A.      Priority Claims.**

**1**.      **Class 1** consists of all Priority Non Tax Claims asserted by any Allowed Creditor possessing a Priority Non Tax Claim under the Bankruptcy Code.

**2**.      **Class 2** consists of all state and local taxing authorities possessing a Priority Tax Claim.

{00356096-37}

B.  **Secured Claims.**

1.  **Class 3 (Central Bank of St. Louis).**

Class 3 consists of all Secured Claims of Central, including but not limited to those arising under the Secured Lender Loan Documents.

2.  **Class 4 (Citizens Bank).**

Class 4 consists of all Secured Claims of Citizens, including but not limited to those arising under the Secured Lender Loan Documents.

3.  **Class 5 (Community Bank).**

Class 5 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

4.  **Class 6 (Mack Financial Services) and Class 6A (BOA).**

Class 6 and Class 6A consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents. The claims of Mack and BOA included in Classes 6 and 6A shall only be an amount equal to the value of such creditor's collateral. The balance of the Mack and BOA claims shall be treated as a Class 17 claim. Classes 6 and 6A shall each be considered a separate class for voting purposes.

5.  **Class 7 (Mercedes Benz Financial Services).**

Class 7 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

6.  **Class 8 (Siemens Financial Services, Inc.).**

Class 8 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

7.      **Class 9 (Wells Fargo Equipment Finance).**

Class 9 consists of all Secured Claims of the Secured Lender, including, but not limited to, those arising under the Secured Lender Loan Documents. The Class 9 claim of Wells Fargo shall only be equal to the value of the Wells Fargo collateral unless Wells Fargo makes an 11 U.S.C. § 1111(b) election. Absent an § 1111(b) election, the difference between the allowed Wells Fargo claim and the value of the Wells Fargo collateral shall be treated as a Class 17 claim.

8.      **Class 10 (Sterling National Bank).**

Class 10 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

9.      **Class 11 (TCF Equipment Finance, Inc.).**

Class 11 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

10.     **Class 12 (Caterpillar Financial Services).**

Class 12 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

11.     **Class 13 (Cerny Real Estate Interests).**

Class 13 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

12.     **Class 14 (Jeff Davis Bank).**

Class 14 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

13. **Class 15 (DeLage Landen Financial Services, Inc.).**

Class 15 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

14. **Class 16 (Peoples United Equipment Finance).**

Class 16 consists of all Secured Claims of the Secured Lender, including but not limited to those arising under the Secured Lender Loan Documents.

C. **Unsecured Claims.**

**Class 17 (General Unsecured Creditors).**

Class 17 consists of all Unsecured Claims against the Debtor, to the extent not included in any other class.

D. **Interests.**

**Class 18 (Members).**

Class 18 consists of all Members.

E. **Amegy,**

Class 19 consists of Amegy.

F. **Secured Taxing Authorities.**

Class 20 shall consists of taxing authorities possessing secured claims and not Priority Tax Claims.

G. **Toups.**

Class 21 shall consists of the secured claim of Toups.

## III.
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

A. **Unclassified Claims.**

1. **Administrative Claims.**

### a. Generally.

Subject to the bar date provisions herein, the Disbursing Agent shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date, or (b) the date such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment.

### b. Payment of Statutory Fees.

On or before the Effective Date, all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash in full.

### c. Bar Date for Administrative Claims.

#### i. General Provisions.

Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims and substantial contribution claims must be filed no later than sixty (60) days after the Effective Date. Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to File a request for payment of such claims and that do not File such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other Person, or any of their respective property.

Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

#### ii. Professionals.

All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for

15

services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case or any creditor seeking recovery under 11 U.S.C. § 506(a)) shall File and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. If such claim is not filed, the professional or party seeking recovery under 11 U.S.C. § 506 shall be deemed to waive such claim.

### iii.     Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described in subparagraph (ii) above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to File any request for payment of such claims. Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.

## 2.     Priority Tax Claims

Each holder of an Allowed Priority Tax Claim other than Class 2 claim shall receive one of the following three treatments, as determined by the Reorganized Debtor in its sole and absolute discretion, on account of and in full satisfaction of such Allowed Priority Tax Claim: (a) Cash on the Effective Date, or on such other date on which such Priority Tax Claim becomes an Allowed Claim, in an amount equal to the amount of the Allowed Priority Tax Claim; (b) regular quarterly installment payments in Cash based upon the Amortization Period, plus interest at such annual rate as is determined in accordance with section 511 of the Bankruptcy Code, over a period ending not later than five (5) years after the Petition Date; or (c) on such other terms and conditions as agreed to by the Reorganized Debtor and the holder of the Allowed Priority Tax Claim. The Reorganized Debtor may prepay, without penalty, at any time

{00356096-37}

any Allowed Priority Tax Claim treated in accordance with option (b) above.

  **B.** **Classified Claims**

    **1.** **Class 1 (Priority Non Tax Claims).**

    Class 1 is unimpaired under the Plan, and the holders of Priority Tax Claims are deemed to have voted in favor of the Plan. The Disbursing Agent shall pay each holder of an Allowed Priority Tax Claim against the Debtor on account of and in full satisfaction of such Allowed Priority Tax Claim, Cash equal to the amount of the Allowed Priority Tax Claim, on the later of: (a) the Effective Date, or (b) the date such Priority Tax Claim becomes an Allowed Priority Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment.

    **2.** **Class 2 (State and Local Priority Tax Claims).**

    Class 2 is unimpaired under the Plan, and the holders of Priority Tax Claims are deemed to have voted in favor of the Plan. The Disbursing Agent shall pay each holder of an Allowed Priority Tax Claim against the Debtor on account of and in full satisfaction of such Allowed Priority Tax Claim in accordance with 11 U.S.C. § 1129, beginning on the later of: (a) the Effective Date, (b) the date such Priority Tax Claim becomes an Allowed Priority Claim, or c) paid over five (5) years in quarterly installments in accordance with 11 U.S.C. § 511 and 11 U.S.C. § 1129.

    **3.** **Class 3 (Central Bank of St. Louis).**

    Class 3 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 3 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

17

{00356096-37}

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 4. Class 4 (Citizens Bank).

Class 4 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 4 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. The outstanding balance due the Class 4 creditor shall be due and payable on the fifth anniversary of the Effective Date. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

{00356096-37}

**Defaults:** All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

**5.    Class 5 (Community Bank).**

Class 5 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 5 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. The outstanding balance due the Class 5 creditor shall be due and payable on the fifth anniversary of the Effective Date. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

**Defaults:** All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

**6.    Class 6 (Mack Financial Services) and Class 6A (BOA).**

{00356096-37}

Both Class 6 and Class 6A are impaired under the Plan, and each is the holder of a separate Secured Lender Claim and both the Class 6 and Class 6A creditors are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Classes 6 and 6A creditors shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 7. Class 7 (Mercedes Benz Financial Services).

Class 7 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 7 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

8. **Class 8 (Siemens Financial Services, Inc.).**

Class 8 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 8 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as

{00356096-37}

of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 9. Class 9 (Wells Fargo Equipment Finance).

Class 9 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 9 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. If the Class 9 creditor makes an 11 U.S.C. § 1111(b) election, such creditor shall be paid in accordance with the requirements of 11 U.S.C. § 1111(b). In addition:

- No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 10. Class 10 (Sterling National Bank).

Class 10 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 10 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

## 11. Class 11 (TCF Equipment Finance, Inc.).

Class 11 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 11 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the adequate protection stipulation entered into between the parties (Dkt. #329). In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

**12.    Class 12 (Caterpillar Financial Services).**

Class 12 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan.  Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 12 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization.

- <u>No Prepayment Penalty</u>:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as

of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 13. Class 13 (Cerny Real Estate Interests).

Class 13 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 13 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. The remaining outstanding balance due the Class 13 creditor shall be due and payable on the fifth anniversary of the Effective Date. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

***Defaults:*** All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 14. Class 14 (Jeff Davis Bank).

{00356096-37}

Class 14 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 14 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 15.    Class 15 (DeLage Landen Financial Services, Inc.).

Class 15 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 15 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:*  All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 16.  Class 16 (Peoples United Equipment Finance).

Class 16 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan.  Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z, the Class 16 creditor shall receive monthly payments to satisfy its Allowed Claim at the rate embedded in the Adequate Protection Order (Dkt. #155) in accordance with the Secured Lender Amortization.  In addition:

- <u>No Prepayment Penalty</u>:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:*  All defaults and events of default existing as of the Petition Date and as

{00356096-37}

of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

**17.    Class 17 (General Unsecured Claims).**

Class 17 is impaired under the Plan, and the holders of Class 17 Claims are entitled to vote on the Plan.  Each Allowed Class 17 creditor shall receive such creditor's pro-rata share of the Fund.  The Allowed Class 17 creditors will receive their pro-rata share of the Fund based upon the following:

(a)    an amortization of five (5) years;

(b)    a final payment of all unpaid principal and interest of the Fund amount on the fifth anniversary of the Effective Date of the Plan; and

(c)    quarterly payments with the first payment ninety (90) days after the Effective Date of the Plan.

In addition, the Allowed Class 17 creditors shall share pro-rata in the Class 17 Excess Payment on an annual basis.

Class 17 creditors may elect to accept on the Effective Date a cash payment equal to two percent (2%) of such creditor's Allowed Claim which amount shall be paid on the later of: (i) the Effective Date; or (ii) when such claim is allowed.

**18.    Class 18 (Members).**

Class 18 is impaired under the Plan.  The interests of the current Members shall be reduced from one hundred percent (100%) to ninety-seven percent (97%) and Douglas Marcantel shall have a three percent (3%) interest.  The post Effective Date members shall execute a new operating agreement.

28

{00356096-37}

### 19. Class 19 (Amegy).

Class 19 is Impaired. Amegy holds pre-petition and post-petition first priority liens and security interests against the Debtor based on the Amegy Financing Documents and the Amegy DIP Order (the "Amegy Secured Claim") and is entitled to vote on the Plan.

As of the Petition Date, Amegy had a significant secured Claim collateralized by the Amegy Collateral. Subsequent to the Petition Date, pursuant to the Amegy DIP Order, the Court permitted the Debtor to enter into post-petition debtor-in-possession financing, as well as permitted the use of cash collateral to which Amegy's first priority liens and security interests attached. As of the date of the filing of the Plan (March 8, 2017), the total post-petition obligation owed to Amegy is approximately $1,982,498.62, which said amount is subject to change from time to time as invoices are purchased and collected thereunder, and as fees and costs accrue thereunder, as provided in the Amegy Financing Documents. Pursuant to Amegy DIP Order, Amegy was granted, among other things, a super-priority administrative expense claim and a perfected first priority security interest in the Amegy Collateral for any and all liabilities and obligations of the Debtor to Amegy arising from the Amegy DIP Order.

The Amegy Secured Claim shall be deemed allowed as described above, and shall be paid in full pursuant to, and in accordance with, the Amegy Financing Documents and the Amegy DIP Order. Pursuant to the Plan, the Confirmation Order and any related documents (including, without limitation, a reaffirmation agreement), the Reorganized Debtor shall, as of the Effective Date, among other things: (1) continue operating under the Amegy Financing Documents on a post-confirmation basis, including, without limitation, administering the sale of its accounts receivable to Amegy, and to otherwise operate pursuant to, and in accordance with, the terms and conditions of the Amegy Financing Documents. In that regard, the Amegy Financing Documents, and all Obligations (as that term is defined in the Amegy DIP Order) arising therefrom or related thereto, hereby are deemed to be valid and binding obligations which are enforceable against the Reorganized Debtor and all related parties (as identified in the

{00356096-37}

Amegy Financing Documents) in favor of Amegy; and (2) sell and assign its accounts receivable to Amegy on a post-confirmation basis, subject to the terms of the Amegy Financing Documents, the Plan, the Confirmation Order and any related documents (including, without limitation, a reaffirmation agreement), and to execute all documents, to the extent necessary, and take all actions in connection with, and in furtherance of, all undertakings and Obligations under the Amegy Financing Documents on a post-confirmation basis.

### 20. Class 20 (Secured Taxing Authorities).

Class 20 is impaired.

The claims of Secured Taxing Authorities shall be paid in full based upon an amortization equal to the numbers of quarters between the Effective Date and five (5) years from the Petition Date in quarterly installments with the first quarterly payment being made on the first business day of the first full three (3) months following the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the Effective Date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance from the Effective Date until the tax debt is paid in full.

In the event the Reorganized Debtor sells, conveys or transfers any of the properties which are collateral for the Class 20 claim and/or any post-petition/post confirmation tax debt, the Reorganized Debtor shall remit such sale proceeds first to the Class 20 creditor who possesses a lien on such property sold to be applied to such Class 20 creditor or creditors' tax debt incident to any such property sold, conveyed or transferred and such proceeds sale be disbursed by the closing agent at the time of closing; or if a title company does not perform the closing, said tax debt shall be paid by the Reorganized Debtor within fifteen (15) days of receipt of the sale proceeds and said disbursement (whether by the title company or the Reorganized Debtor) shall be made prior to any disbursement of the sale proceeds to any other person or entity.

{00356096-37}

Each Class 20 creditor shall retain its lien securing its pre-petition and post-petition tax debt until such time as the tax debt is paid in full. Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2017 and subsequent tax years) on all tax accounts owing to any Class 20 creditor in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of a Class 20 creditor to file an administrative expense claim and/or request for payment. The Reorganized Debtor may pre-pay the pre-petition tax debt owed to a Class 20 creditor at any time. Any of the following events shall constitute a default of this Plan:

1.      Should the Reorganized Debtor fail to make any payments as required in this Plan; or

2.      Failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt.

Should the Reorganized Debtor default, the Class 20 creditor who asserts that a default exists shall provide written notice of that default by sending written notice by certified mail to the Reorganized Debtor and Reorganized Debtor's counsel advising of that default, and providing the Reorganized Debtor with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, a Class 20 Creditor may, without further order of this Court or notice to the Reorganized Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than two (2) Notices of Default. In the event of a third (3rd) default, a Class 20 Creditor may pursue all rights and remedies available to it under applicable non bankruptcy law Code in state district court without further order of this court or further notice to the Reorganized Debtor.

21.      **Class 21 (Toups).**

Class 21 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. The treatment of the Class 21 creditor shall receive monthly payments based upon the value of the Class 21 creditor's collateral, Secured Lender Plan Rate

{00356096-37}

and Secured Lender Amortization. The outstanding balance due the Class 21 creditor shall be due and payable on the fifth anniversary of the Effective Date. In addition:

        •      No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

        •      Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

        •      Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

        *Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

# IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

**A.**      **Voting Classes.**

        Each holder of a Claim in Classes 3-17, 19 and 20 shall be entitled to vote to accept or reject the Plan and each holder of an Interest in Class 18 shall be entitled to vote to accept or reject the Plan. Each holder of a Claim in Classes 1 and 2 are deemed to have accepted the Plan.

**B.**      **Voting Rights of Holders of Disputed Claims and Disputed Interests.**

        Pursuant to Bankruptcy Rule 3018(a), a Claim or Interest that is Disallowed or which is disputed or objected to will not be counted for purposes of voting on the Plan to the extent it is disputed, unless the Court enters an order temporarily allowing the Claim or Interest for voting purposes under Bankruptcy Rule 3018(a). Such disallowance for voting purposes is

{00356096-37}

without prejudice to the claimant's or interest holder's right to seek to have its Claim or Interest, as the case may be, allowed for purposes of distribution under the Plan.

**C.     Acceptance by Impaired Classes.**

An impaired class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Claims actually voting in such class have voted to accept the Plan, and (b) more than one-half in number of the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of such Claims actually voting in such class have voted to accept the Plan.

An impaired class of Membership Interests shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Interests actually voting in such class have voted to accept the Plan.

**D.     Nonconsensual Confirmation/Alternative Treatment/Cramdown.**

a.     <u>Cramdown</u>

In the event that any Class of Claims or Interests fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and/or (b) modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

**V.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.     Rejection.**

Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date or previously been rejected by the Debtor in Possession pursuant to an order of the Bankruptcy Court, shall be <u>rejected</u> by the Debtor as of the Effective

{00356096-37}

Date pursuant to sections 365 and 1123 of the Bankruptcy Code. Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered in connection with the Plan creates any obligation or liability on the part of the Debtor, the Reorganized Debtor, or any other Person that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as otherwise provided in the Plan.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving all such rejections as of the Effective Date. Any claims for damages arising from the rejection under this Plan of an executory contract or unexpired lease must be Filed within thirty (30) days after the Effective Date or be forever barred and unenforceable against the Debtor, Reorganized Debtor, and their properties and barred from receiving any distribution under the Plan.

**B.     Assumption.**

The Debtor has previously assumed its executory contracts with Nations Financial ("Nations") and John Douglas Verzwyvelt, Jr. To the extent the Debtor elects to assume any other executory contracts or unexpired leases, such assumption shall be by separate Motions filed on or before the confirmation hearing.

In connection with the confirmation of the Plan, the Debtor will assume its executory contract with Peoples.

**C.     Cure Payments.**

The cure payments for the assumption of the Nations executory contract and the unexpired lease are set forth in the Motions assuming such executory contracts and leases.

**D.     Assumption of Executory Contracts.**

The Debtor has assumed its executory contracts with John Douglas Verzwyvelt and Nations. John Douglas Verzwyvelt leases to the Debtor non-residential real property used in the operations of the Debtor. Nations leases to the Debtor equipment that is essential to the Debtor's operations. The Court has approved the Debtor's assumption of the executory contracts

and leases referenced herein.

E.    **Sale of Non-Essential Property.**

Early in the Chapter 11 case, the Debtor conducted a complete review of its equipment in an effort to reduce debt through the sale on non-essential property.  The Debtor filed a motion with the Bankruptcy Court which was approved wherein the Debtor was authorized to sell certain cranes and moving stock.  In accordance with the Order of the Bankruptcy Court, the Debtor was authorized to sell the excess equipment.  Auctions of the equipment were conducted and a majority of the proceeds were paid to the Debtor's Secured Lenders.

## VI.

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

A.    **Effective Date.**

1.    **Date of Effective Date.**  The "Effective Date" of this Plan shall be the first business day selected by the Debtor that is after the Confirmation Date and upon which all conditions to the effectiveness of this Plan have been satisfied or waived as provided for below, but in no event shall the Effective Date be later than thirty (30) days after the Confirmation Order is a final order.

2.    **Effective Date Conditions.**  Notwithstanding any other provision of this Plan, the Effective Date shall not occur until each of the following conditions have been either (a) satisfied (or satisfied contemporaneously with the Effective Date) or (b) waived by the Debtor.  The Confirmation Order, approved in form and substance satisfactory to the Debtor becomes a final non-appealable Order.

B.    **Revesting of Assets and Operations of Property.**

Except as otherwise set forth herein, the Secured Lender Loan Documents, or in the

{00356096-37}

Confirmation Order, as of the Effective Date, all property of the Estate (including debtor in possession bank accounts, Cash held by any receiver, custodian or similar person or entity, insurance policies, including title insurance, and all rights of the Debtor thereunder, and the retained claims and Causes of Action) shall revest in the Reorganized Debtor free and clear of all claims, liens, encumbrances and other interests of creditors and holders of interests. From and after the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

On the Effective Date, pursuant to the Plan and the Confirmation Order, any receiver, custodian or similar person or entity appointed prior to the Effective Date for the Debtor or any of its property shall be terminated and discharged from its responsibilities and duties and all property, including Cash, of the Debtor held by such receiver, custodian or similar person or entity shall be immediately turned over to the Reorganized Debtor, without setoff or offset.

**C.     Funding of the Plan.**  The Cash required to be distributed under the Plan to the holders of Allowed Administrative Claims and Allowed Claims on the Effective Date (or on such later date when such Claims become Allowed Claims) shall be provided by (i) the Cash held by the Debtor on the Effective Date and (ii) the Reorganized Debtor's operations.

**D.     Post-Effective Date Management of the Debtor.**

1.     Debtor's Manager:

The Manager of the Debtor Post Effective Date shall be LF LLC who shall provide the services of Logan Fournerat.  Logan Fournerat has been in the crane industry since 1980 and has been the manager of the Debtor since 2002.

2.      Officers of the Debtor Post Effective Date and Compensation:

{00356096-37}

a) LF LLC will provide the services of Logan Fournerat to serve as CEO and LF LLC shall receive a management fee of $350,000.00 plus the right to participate in the Debtor's company bonus plan. LF LLC's bonus, which shall be payable only in the event the Debtor, is current with respect to its payments due under this Plan; and

b) Douglas D Marcantel, CFO who has thirty (30) years of experience in public accounting and industry and has served as CFO of Debtor for the past eleven (11) years. The CFO shall receive a salary of $225,000.00 annually and shall be eligible for a bonus.

**E.    Disbursing Agent.**    Subject to the approval of the Bankruptcy Court, the Reorganized Debtor, or such other entity as the Reorganized Debtor may employ, shall act as Disbursing Agent under the Plan and make all distributions required under the Plan. Unless otherwise required, the Disbursing Agent shall serve without bond.

Only the Reorganized Debtor shall be entitled to object to Claims and Interests. Any objections to Claims and Interests shall be served and filed on or before the later of: (i) sixty (60) days after the Effective Date; (ii) thirty (30) days after a request for payment or proof of Claim or Interest is timely Filed and properly served; or (iii) such other date as may be fixed by the Bankruptcy Court, whether before or after the dates specified in subsections (i) and (ii) herein, upon motion of the Reorganized Debtor. Notwithstanding any authority to the contrary, an objection to a Claim or Interest shall be deemed properly served on the Creditor if service is effected in any one of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on any counsel that has appeared on the Creditor's or Interest holders' behalf in the Reorganization Case; or (c) by first class mail, postage prepaid, on the signatory on the proof

{00356096-37}

16-50876 - #586  File 06/06/17  Enter 06/06/17 17:29:05  Main Document   Pg 37 of 52

of Claim or Interest or other representative identified in the proof of Claim or Interest or any attachment thereto.

The Reorganized Debtor may object to or settle, without Court approval, any Administrative Claim. Any objections to Administrative Claims shall be served and filed on or before the later of: (i) forty-five (45) days after the Effective Date; (ii) thirty (30) days after a request for payment or allowance of an Administrative Claim is timely Filed and properly served; or (iii) such other date as may be fixed by the Bankruptcy Court, whether before or after the dates specified in subsections (i) and (ii) herein.

F.     **Disputed Claims.** Pending resolution of a Disputed Claim, all Cash to be distributed to the holder of the Disputed Claim shall be placed in a segregated bank account at a federally insured financial institution and maintained by the Disbursing Agent until distribution to the holder of such Claim under the Plan. Distribution shall be made only from the Disputed Claims reserve and only at such time as a particular Claim is determined to be an Allowed Claim. The holder of a Disputed Claim that is ultimately allowed shall have no recourse against the Reorganized Debtor or its property for the payment of its Allowed Claim. No interest shall accrue or will be paid with respect to any Disputed Claim for the period from the Effective Date to the date a distribution, if any, is made with respect to said Disputed Claim upon becoming an Allowed Claim. To the extent that a Disputed Claim ultimately is disallowed or allowed in an amount less than the amount of the reserves for such Disputed Claim, any resulting surplus in the reserve shall be transferred from the reserve to the Reorganized Debtor.

G.     **Discharge Of Debtor And Injunction.** Except as otherwise provided herein, the rights afforded in the Plan and the treatment of all Claims and Membership Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Membership Interests of any nature, whatsoever, including, any interest accrued on such claims from and after

{00356096-37}

the Petition Date against the Debtor, the Debtor in Possession, or any of their assets or properties. Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date: (i) the Debtor shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code from all claims and interests, including claims and interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code whether or not: (a) a proof of claim or proof of interest based on such debt or interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a claim or interest based on such debt or interest is allowed pursuant to section 502 of the Bankruptcy Code, or (c) the holder of a claim or interest based on such debt or interest has accepted the Plan; and (ii) all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, their successors, or their respective assets or properties any other or future claims or interests based upon any act or omission, transaction, or other activity of any kind or nature relating to the Debtor or the Debtor-in-Possession that occurred before the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code on and after the Effective Date, all Persons who have held, currently hold or may hold a debt, claim, or interest discharged under this Plan are permanently enjoined from taking any of the following actions on account of any such discharge, debt, claim, or interest: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, the Reorganized Debtor, their successors, or their respective properties; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor, Reorganized Debtor their successors, or their respective properties; (3) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, Reorganized Debtor, their successors, or their respective

{00356096-37}

properties; (4) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, Reorganized Debtor, their successors, or their respective properties; and (5) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order. Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

**H.    Exculpation and Limitation of Liability.**

On or after the Effective Date, none of the Debtor, the Debtor in Possession, the Reorganized Debtor or any of their respective employees, officers, directors, partners, members, managers, agents, or representatives shall have or incur any liability to any Person, and are hereby released from any such liability or any claims or causes of action related thereto, for any act taken or omission made in connection with, relating to, or arising out of (i) the Reorganization Case, (ii) the negotiation, formulation and filing of the Plan, and any contract, instrument, release, or other agreement or document created in connection with the Plan, including the Membership Agreement, (iii) the negotiation, preparing, filing and dissemination of the Disclosure Statement and the solicitation of votes on, or funds for, the Plan, (iv) confirmation of the Plan, and (v) the consummation and administration of the Plan, or distribution of any property under the Plan that does not arise from intentional misconduct or gross negligence as determined under applicable law.

**I.    Execution of Documents and LLC Action.**  The Debtor and Debtor in Possession, on behalf of themselves, and the Reorganized Debtor, shall execute such documents and take such other action as is necessary to effect the transactions provided for in the Plan.

**J.    Retention of Jurisdiction.**

{00356096-37}

After Confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction that exists in any other court, the Bankruptcy Court will retain such jurisdiction, as is legally permissible including for the following purposes:

1.     To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

2.     To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

3.     To determine the extent, validity, and priority of any lien asserted against property of the Reorganized Debtor or property of the Estate;

4.     To construe and to take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, and the Confirmation Order and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Reorganization Case on or before the Effective Date with respect to any Person;

5.     To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

{00356096-37}

6.      To determine any other request for payment of administrative expenses;

7.      To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan and the Confirmation Order;

8.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases Filed before the Effective Date and the allowance of any claims resulting therefrom;

9.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the Reorganization Case whether before, on, or after the Effective Date;

10.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

11.     To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

12.     Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan and the Confirmation Order or the execution or implementation by any Person;

13.     To hear and determine matters concerning state, local and federal taxes in

42

accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

      14.     To enter a final decree closing the Reorganization Case; and

      15.     To issue such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules.

**K.     Successors and Assigns.**  The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such entity.

**L.     Amendment, Modification, and Severability.**

      1.     This Plan, as well as the form of the Membership Agreement, may be amended or modified before the Effective Date by Debtor to the extent provided by section 1127 of the Bankruptcy Code.

      2.     The Debtor reserves the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan, as it is currently drafted, is not confirmable pursuant to section 1129 of the Bankruptcy Code to the extent such a modification or amendment is permissible under section 1127 of the Bankruptcy Code without the need to re-solicit consents, and the Debtor reserves the right to sever any provisions that the Bankruptcy Court finds objectionable.

**M.     Delivery of Distributions and Deliverable or Unclaimed Distributions.**

      **1.     Delivery of Distributions in General.**

Except as provided below for holders of undeliverable distributions, distribution to holders of Allowed Claims shall be distributed by mail as follows:

      a.     At the addresses set forth on the respective proofs of claims of

43

such holders;

     b.    At the addresses set forth in any written notices of address, changes delivered to the Disbursing Agent after the date of any related proof of claim; or

     c.    At the address reflected on the Schedules if no proof of claim or proof of interest is Filed and the Disbursing Agent has not received a written notice of change of address.

     **2.**    **Undeliverable Distributions.**

Any holder of an Allowed Claim which does not assert a claim for an undeliverable distribution held by the Disbursing Agent within six (6) months after the delivery of any distribution shall no longer have any claim to or interest in such undeliverable distribution. After the expiration of six (6) months following the date a distribution is made, holders of Allowed Claims entitled to returned distributions shall no longer be entitled thereto, and such Allowed Claims shall be deemed disallowed without further Court order. Thereafter, any unclaimed distributions with respect to the Allowed Claims shall revert to and become the property of the Reorganized Debtor.

No provision contained in this Section VI. O. or elsewhere in the Plan shall be interpreted to require the Reorganized Debtor or the Disbursing Agent to attempt to locate any such Person.

In the event any payment to a holder of a Claim under the Plan remains unclaimed for a period of six (6) months after such distribution has been made (or after such delivery has been attempted), such Unclaimed Distribution and all future distributions to be made to such holders shall be deemed forfeited by such holder and any such distributions retained by the Reorganized Debtor.

     **3.**    **Fractional Cents.**   Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of

{00356096-37}

such fraction to the nearest whole cent (rounding down in the case of .5).

     **4.**     **No Cash Payments of $5.00 or Less on Account of Allowed Claims**.  If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than Five Dollars ($5.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, no such payment will be made and the Reorganized Debtor shall retain such funds for its own purposes.

**N.**     **Retention of Claims and Causes of Action.**  Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Reorganization Case: (i) any and all retained claims and Causes of Action accruing to the Debtor or the Estate shall remain assets of and vest in the Reorganized Debtor, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such retained claims and Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Court, and (ii) neither the Debtor, the Estate, nor the Reorganized Debtor waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any retained claims and Causes of Action that constitute property of the Debtor or the Estate: (a) whether or not such retained claims and Causes of Action have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not any such Retained Claim and Cause of Action is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to any such Retained Claim and Cause of Action Filed a proof of claim or interest in the Reorganization Case, Filed a notice of appearance or any other pleading or notice in the Reorganization Case, voted for or against this Plan, or received or retained any consideration under this Plan.  Without in any manner limiting the scope of the foregoing,

{00356096-37}

notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any retained claims and Causes of Action, or potential retained claims and Causes of Action, in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's or the Reorganized Debtor's right to commence, prosecute, defend against, settle, recover on account of, and realize upon any retained claims and Causes of Action that the Debtor or its Estate have or may have as of the Effective Date.

The Debtor expressly reserves all retained claims and Causes of Action for later adjudication by the Reorganized Debtor, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such retained claims and Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Reorganized Debtor expressly reserves the right to pursue or adopt retained claims and Causes of Action that are alleged in any lawsuits in which the Debtor is a defendant or an interested party, against any Person, including the plaintiffs or co-defendants in such lawsuits.

Any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtor, or who has received money or property from the Debtor, or who has transacted business with the Debtor, or who has leased equipment or property from or to the Debtor should assume that such obligation, receipt, transfer or transaction may be reviewed by the Debtor or the Reorganized Debtor subsequent to the Effective Date and maybe the subject of an action after the Effective Date, whether or not: (a) such Person has Filed a proof of Claim or Interest against the Debtor in

{00356096-37}

the Reorganization Case; (b) such Person's proof of Claim or Interest has been objected to by the Debtor; (c) such Person's Claim or Interest was included in the Debtor's Schedules; or (d) such Person's scheduled Claim or Interest has been objected to by the Debtor or has been identified by the Debtor as contingent, unliquidated or disputed.

Under the Bankruptcy Code, the Debtor possesses claims against insiders that are reflected on the Debtor's books and records. The claims that will be preserved by the Debtor shall be certain preference claims and claims against Logan Fournerat and the Fournerat Family LLC as set forth on the Debtor's books and records.

The Debtor does not intend to pursue such claims however efforts will be made to have the statute of limitations on the claims extend to one day after the fifth anniversary of the Effective Date. If all payments are made under the Plan, the Debtor will extend the maturity date of the claims against Logan Fournerat and the Fournerat Family LLC an additional ten years.

O.     **No Waiver of Claims.**  Neither the failure to list a Claim or Membership Interest in the Schedules filed by the Debtor, the failure of the Debtor or any other Person to object to any Claim or Membership Interest for purposes of voting, the failure of the Debtor or any other Person to object to a Claim, Interest or Administrative Claim before Confirmation or the Effective Date, the failure of any Person to assert a claim or cause of action before Confirmation or the Effective Date, the absence of a proof of Claim or Interest having been filed with respect to a Claim or Interest, nor any action or inaction of the Debtor or any other Person with respect to a Claim, Interest, or Administrative Claim, other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Debtor or the Reorganized Debtor before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim, Interest or Administrative Claim, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any claim or cause of action against the holder of any such Claim or

{00356096-37}

Membership Interest.

**P.      Notices Under the Plan.**

Notices (including, without limitation, a Notice of Default), requests, or demands with respect to this Plan shall be in writing and shall be deemed to have been received (provided the Notice is addressed properly) within three (3) days of sending if sent by a recognized overnight delivery service (e.g., UPS or Federal Express) or within five (5) days of the date of mailing if sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to Debtor, addressed to:

> **To Debtor at**:
>
>> Douglas D. Marcantel
>> Louisiana Crane & Construction, LLC
>> 1045 Hwy. 190 West
>> Eunice, LA  70535
>>
>> with a copy to:
>>
>> Heller, Draper, Patrick, Horn & Dabney, L.L.C.
>> Attn: Douglas S. Draper
>> 650 Poydras Street, Suite 2500
>> New Orleans, LA 70130
>> Telephone: (504) 299-3300
>> Fax (504) 299-3399

**Q.      Withholding Taxes/Setoffs.**

The Reorganized Debtor and the Disbursing Agent shall be entitled to deduct any Federal or State withholding taxes from any payments with respect to Allowed Claims for wages of any kind.  The Reorganized Debtor and the Disbursing Agent may, but shall not be required to, set off or recoup against any Claim, and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtor or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim the Debtor may

48

have against such holder.

**R.** **Term of Injunctions or Stays.** Unless otherwise provided, all injunctions or stays arising before the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, or such later date as provided under applicable law.

**S.** **Exemption from Certain Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer hereunder will not be subject to any stamp tax or similar tax.

**T.** **Securities Law Exemption.** Pursuant to section 1145 of the Bankruptcy Code, the issuance of any limited Membership Interests in connection therewith shall be exempt from registration under any federal, state or local law, rule or regulation.

**U.** **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Louisiana (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

**V.** **Termination of Committee.** As of the Effective Date, any Committee appointed in this Reorganization Case shall terminate and shall have no rights, responsibilities, powers, duties or authority thereafter.

**W.** **Reports/Post Effective Date Notice.** The Debtor and the Reorganized Debtor shall file with the Court a notice of the occurrence of the Effective Date within two (2) business days of the occurrence of the Effective Date. After the Effective Date, the Reorganized Debtor will make distributions every six (6) months, to the extent any such distribution would not be de

{00356096-37}

minimis, until the Reorganization Case is closed. Forty-five (**45**) days after the Effective Date, the Reorganized Debtor will file with the Bankruptcy Court a status report to reflect paid, unpaid and disputed Claims. From and after the Effective Date, any Person who desires notice of any pleading or document filed in the Reorganization Case, or of any hearing in the Court, or of any matter as to which the Bankruptcy Code requires notice to be provided, shall file a request for post-confirmation notice and shall serve the request on counsel for the Debtor, and on counsel for the Reorganized Debtor; provided however, the United States Trustee shall be deemed to have requested post-confirmation notice.

**X.      Plan Exclusive Remedy/Suit Limitation.**  Notwithstanding anything contained herein to the contrary, neither the Debtor, the Reorganized Debtor, the Officers nor the Guarantors shall be discharged and released from any liability for Claims under the Plan, however, the exclusive remedy for payment of any Claims so long as the Plan is not in default shall be the Plan.

Notwithstanding anything contained herein to the contrary, neither the Debtor, Reorganized Debtor, the Officers nor Guarantors shall be discharged and released from any liability for Claims under the Plan, however, absent further Court Order upon Notice and Hearing, the exclusive remedy for payment of any Claim of a Creditor that is being paid in full under the Plan so long as the Plan is not in default shall be the Plan. Each Creditor which possesses a guaranty of a Claim against the Debtor (a "Guaranty") to the extent that such Creditor is being paid in full under the Plan is enjoined from filing suit against any of the guarantors or sureties of such Claim (each, a "Guarantor") absent: 1) the Plan being in default with respect to such Creditor; and 2) so long as the Debtor's bankruptcy case remains open, an order of the Bankruptcy Court is entered authorizing the Creditor to proceed against any or all of the Guarantors; provided, however, that notwithstanding any term or provision in this Plan, any

Guaranty shall continue to be in full force and effect and any Guarantor that is liable to any Creditor pursuant to any Guaranty shall be liable to such Creditor for the Debtor's obligations to such Creditor under this Plan pursuant to the terms and conditions of the Guaranty.

**Y.      Remedies upon plan default.**  To the extent a default occurs under the Plan, creditors will be able to exercise whatever rights and remedies they possess under applicable Bankruptcy and Non-Bankruptcy Law.

**Z.      Payment Commencement Date.**  Payments under the Plan for creditors in Classes 3, 5, 7,9, 11, 13 and 15 will commence on the 5th day of the month following the Effective Date and be due the 5th of each month thereafter.  Payments under the Plan for creditors in Classes 4, 6, 8, 10, 12, 14, and 16 will commence on the 20th day of the month following the Effective Date and will be due the 20th of each month thereafter.  The Debtor will have a ten (10) day cure period for any and all payment defaults from the date of Notice of Default.

**AA.      Secured Creditor Option and Section 1111(b) Election**.  The Plan is premised on the assumption that creditors whose claims are being treated as fully secured and paid in full under the Plan agree to be bound by the provisions of Article VI, Section X, of the Plan.  Any secured creditor who is being paid in full and who elects not to be bound by Article VI, Section X, of the Plan will not be treated as fully secured and will be paid monthly based on a starting principal amount equal to the value of such creditor's collateral less the adequate protection payments such creditor has received.  The difference between the creditor's allowed claim and secured claim will be treated as an unsecured claim.  A creditor who elects not to be treated as fully secured must notify counsel for the Debtor in writing ten (10) days prior to the Confirmation Hearing.  In addition, to the extent that a secured creditor makes a Section 1111(b) election, the creditor will receive a stream of payments equal to the allowed amount of such secured creditor's

{00356096-37}

allowed claim less the adequate protection payments received with a present value equal to the value of such creditor's collateral.

Dated: June 6, 2017

PLAN FILED BY:

Louisiana Crane & Construction, LLC

*/s/ Douglas D. Marcantel*
Douglas D. Marcantel

**HELLER, DRAPER, PATRICK, HORN & DABNEY, L.L.C.**

*/s/ Douglas S. Draper*
William H. Patrick, III, (Bar # 10359)
Douglas S. Draper (Bar # 5073)
Leslie A. Collins, (Bar # 14891)
Greta M. Brouphy, (Bar # 26216)
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6175
Telephone: 504-299-3300
Facsimile: 504-299-3399
wpatrick@hellerdraper.com
ddraper@hellerdraper.com
lcollins@hellerdraper.com
gbrouphy@hellerdraper.com
**Counsel for Debtor**

{00356096-37}