UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 16-50876 |
| | : | |
| LOUISIANA CRANE & | : | CHAPTER 11 |
| CONSTRUCTION, LLC | : | |
| | : | |
| DEBTOR | : | |

## AMENDED DISCLOSURE STATEMENT DATED JUNE 6, 2017

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE CHAPTER 11 PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THERE WILL BE A HEARING ON THIS DISCLOSURE STATEMENT TO DETERMINE IF IT PROVIDES ADEQUATE INFORMATION. IF THE DISCLOSURE STATEMENT IS APPROVED BY THE BANKRUPTCY COURT, THERE WILL BE A SUBSEQUENT HEARING TO CONSIDER CONFIRMATION OF THE PLAN. ALL CREDITORS AND EQUITY INTEREST HOLDERS WILL BE NOTIFIED OF THE DATE OF SUCH CONFIRMATION HEARING.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

{00356094-30}

# EXHIBITS TO DISCLOSURE STATEMENT

EXHIBIT D-1          Chapter 11 Amended Plan of Reorganization

EXHIBIT D-2          Financial Projections

EXHIBIT D-3          Liquidation Analysis

EXHIBIT D-4          Co-Debtor Schedule

EXHIBIT D-5          Latest Balance Sheet

EXHIBIT D-6          Latest Profit and Loss Statement

# I.  INTRODUCTION

Louisiana Crane & Construction Company, LLC, the debtor herein and a debtor in possession ("Debtor") has filed a Chapter 11 Amended Plan of Reorganization (the "Plan").  The Plan is attached to this Amended Disclosure Statement as **Exhibit D-1**.  Debtor submits this Amended Disclosure Statement (this "Disclosure Statement"), pursuant to Section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), to holders of Claims against and Interests in the Debtor, in connection with: (i) the solicitation of acceptances or rejections of the Plan (together with any modification, amendment or supplement, of the Plan), and (ii) the hearings to consider approval of the Plan to be scheduled before the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division (the "Bankruptcy Court") on the date(s) set forth in the accompanying notice.

In the event of a conflict or difference between the definitions used, and provisions contained, in this Disclosure Statement and the Plan, the definitions and provisions contained in the Plan shall control.  For ease of reference, those definitions have been reproduced below:

1.      **"Administrative Claim"** means a claim for costs and expenses of administration of the Reorganization Case under section 503(b) of the Bankruptcy Code entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code.

2.      **"Affiliate"** means with regard to any Person, (a) any Person, directly or indirectly, controlled by, under common control of, or controlling such Person; (b) any subsidiary of such Person or any parent entity of such Person; (c) any Person, directly or indirectly, in which such Person holds, of record or beneficially, ten percent (10%) or more of the equity or voting securities, membership interests or Membership Interests; (d) any Person which holds, directly or indirectly, of record or beneficially, ten percent (10%) or more of the

equity or voting securities, membership interests or Membership Interests of such Person; (e) any Person that, through contract, relationship or otherwise, exerts a substantial influence on the management of such Person's affairs; or (f) any Person that, through contract, relationship or otherwise, is influenced substantially in the management of its affairs by such Person.

3.    **"Allowed Administrative Claim"** means all or that portion of an Administrative Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

4.    **"Allowed Claim" or "Allowed Interest"** means, respectively, except as otherwise allowed or provided for in the Plan or a Final Order of the Bankruptcy Court, a Claim or a Membership Interest, proof of which was timely and properly filed or, if no proof of claim or proof of interest was filed, which has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which:

(a) no objection to the allowance thereof has been interposed on or before the later of: (i) the sixtieth (60th) day after the Effective Date, or (ii) the thirtieth (30th) day after proof of such Claim or Membership Interest is filed, or (iii) such other applicable period for objection as may be fixed or extended by the Bankruptcy Court after notice and hearing, or

(b) any objection thereto has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

Unless otherwise specified herein or by order of the Bankruptcy Court, an "Allowed Claim" shall not include any interest, fees, costs or other charges on such Claim accruing after the Petition Date.

5.    **"Amegy"** shall mean Amegy Bank Business Credit, a division of ZB, N.A.

6.    **"Amortization Period"** unless otherwise stated in the Plan shall mean twenty (20) years.

7.    **"Avoidance Actions"** means all of the Debtor's and the Estate's rights and claims under sections 541 through 553 of the Bankruptcy Code, inclusive, or under any similar or related state or federal statute or common law, whether or not an action is initiated on or before

the Effective Date.

8. **"BOA"** means Bank of America Leasing.

9. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Louisiana, or, in the event such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Western District of Louisiana.

10. **"Bankruptcy Rules"** means collectively, the (a) Federal Rules of Bankruptcy Procedure, and (b) Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

11. **"Cash"** means cash or cash equivalents.

12. **"Caterpillar"** shall mean Caterpillar Financial Services.

13. **"Central"** shall mean Central Bank of St. Louis.

14. **"Cerny"** shall mean Cerny Real Estate Interests.

15. **"Citizens"** shall mean Citizens Bank.

16. **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

17. **"Class 2"** shall mean state and local taxing authorities that do not possess a secured claim.

18. **"Class 17 Excess Payment"** shall mean in any calendar year eight and one half percent (8.5%) of the Debtor's revenue for any calendar year minus the greater of $39,000,000.00 or the Debtor's highest revenue for any calendar year after the Effective Date.

19. **"Commencement Date"** shall mean when all conditions for the Effective Date shall have occurred but no later than sixty (60) days after the Effective Date and Plan provisions commence.

20. **"Community"** shall mean Community Bank.

21. **"Confirmation Date"** means the date on which the Confirmation Order is

entered by the Bankruptcy Court.

22. **"Confirmation Hearing"** means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of the Plan, including any continuances thereof.

23. **"Confirmation Order"** means the order of the Bankruptcy Court entered following the Confirmation Hearing that confirms the Plan.

24. **"Debtor in Possession"** means the Debtor between the Petition Date and the Effective Date when acting in the capacity of representative of its Estate in the Reorganization Case.

25. **"DeLage"** shall mean DeLage Landen Financial Services, Inc.

26. **"Deed of Trust or Mortgages"** means the Deed of Trust in favor of any Secured Lender.

27. **"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

28. **"Disallowed Interest"** means an equity interest in the Debtor that has been disallowed by Final Order or a settlement.

29. **"Disbursing Agent"** means the entity designated pursuant to the Plan to hold and distribute property under the Plan, which may be the Reorganized Debtor.

30. **"Disclosure Statement"** means the Disclosure Statement for the Debtor to

accompany the Plan, as modified or amended, filed with the Bankruptcy Court.

31.    **"Disputed Claim"** and **"Disputed Interest",** mean any Claim or Membership Interest that is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest nor a Disallowed Interest, as the case may be.

32.    **"Effective Date"** shall have the meaning ascribed to it in Section VI.D hereof.

33.    **"Estate"** means the estate created in the Reorganization Case under section 541 of the Bankruptcy Code.

34.    **"File"** or **"Filed"** means properly and timely filed with the Bankruptcy Court in the Reorganization Case, as reflected on the official docket of the Court for the Reorganization Case and served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or Order of the Court.

35.    **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for reargument or rehearing pending; provided however that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

36.    **"Fund"** shall mean the sum of $1,500,000.00 plus interest at the rate of 6% per annum.

37.     **"Guarantors"** shall mean (i) Fournerat & Toups Farms LLC; (ii) Fournerat Family LLC; (iii) Joseph Earl Toups; (iv) LLC Equipment I LLC; (v) Logan C. Fournerat; (vi) Louisiana Aviation Co. LLC; (vii) Louisiana Liquids Services, LLC; (viii) Louisiana Properties, LLC; and (ix) Louisiana Vessel and Fabrication, LLC.

38.     **"Interest Holders"** shall mean any person, firm or entity that possesses an equity interest in the Debtor.

39.     **"Jeff Davis"** shall mean Jeff Davis Bank.

40.     "**Loan**" means the loan represented by the promissory note and the other Secured Lender Loan Documents in favor of any Secured Lender.

41.     **"Mack"** shall mean Mack Financial Services.

42.     "**Members**" means collectively the Managing Member and other members of the Debtor.

43.     **"Membership Agreement"** means the Membership Agreement that is filed as a Plan Supplement.

44.     **"Membership Interests"** means the respective legal, equitable, contractual and other rights and ownership interests of the Managing Member and the members in and with respect to the Debtor.

45.     **"Mercedes"** shall mean Mercedes Benz Financial Services.

46.     "**Notice of Default**" means a notice sent by a holder of a Claim or Interest of any default by the Debtor of any provisions of this Plan, which notice shall be served in accordance with Section VI(P) of the Plan.

47.     **"Peoples"** shall mean Peoples United Equipment Finance.

48.     **"Person"** means an individual, corporation, Membership, joint venture, association, joint stock company, limited liability company, limited liability Membership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

49.     **"Petition Date"** means June 27, 2016.

50.     **"Plan"** means the plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

51.     **"Priority Non Tax Claim"** means a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than an Administrative Claim and a tax claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

52.     **"Priority Tax Claim"** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection but excluding Property Tax Claims.

53.     **"Property Tax Claim"** means any tax claim held by a Governmental Unit secured by a lien against the Property.

54.     **"Reorganization Case"** means this bankruptcy case under chapter 11 of the Bankruptcy Code.

55.     **"Reorganized Debtor"** means the Debtor, as revested with property of the Estate to the extent provided in the Plan on or after the Effective Date.

56.     **"Scheduled"** means set forth on the Schedules.

57.     **"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders filed by the Debtor under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

58.     **"Secured Claim"** means any claim that is secured by a valid, perfected and unavoidable lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the claimholder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, and determined under section 506 of the Bankruptcy Code.

59.     **"Secured Lender Amortization"** shall mean sixty (60) months for loans secured by equipment and twenty (20) years for loans secured by real estate.

60.     **"Secured Lender Loan Documents"** mean all documents evidencing the Secured

Lender Loans executed by the Debtor, including, but not limited to, Notes, Deeds of Trust, Security Agreements, Mortgages, UCCs and any other document that creates or perfects a security interest in assets of the Debtor, which is executed by the Debtor in favor of the Secured Lenders (or its predecessors-in-interest and/or assigns), and any other documents executed by the Debtor in consummation of the Plan and/or that need to be amended and restated to conform to the terms of the Plan.

61. **"Secured Lender Plan Rate"** shall mean the lesser of five percent (5%) or the contract rate of interest between the Debtor and a secured lender.

62. **"Secured Lenders"** shall mean Central, Citizens, Community, Mack, Mercedes, Siemens, Wells Fargo, Sterling, TCF, Caterpillar, Cerny, Jeff Davis, DeLage, Peoples, Toups and Amegy.

63. **"Secured Taxing Authorities"** shall mean any taxing authority that possesses an allowed secured claim and not a Priority Tax Claim.

64. **"Siemens"** shall mean Siemens Financial Services, Inc.

65. **"Sterling"** shall mean Sterling National Bank.

66. **"TCF"** shall mean TCF Equipment Finance, Inc.

67. **"Toups"** shall mean Earl Toups.

68. **"Unsecured Claim"** means any claim that is not an Administrative Claim, Priority Claim, Property Tax Claim, or Secured Claim.

69. **"Wells Fargo"** shall mean Wells Fargo Equipment Finance.

## II. PURPOSE AND SUMMARY OF THE PLAN

**THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY. HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW AND ANALYZE THE PLAN IN ITS ENTIRETY**.

The primary purposes of the Plan are to:

• Provide for continued operation and capital;

• Provide for the restructuring of the Debtor's capital structure; and

- Provide for payments to creditors in accordance with the terms of the Plan.

## III. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

### A. TREATMENT OF CLAIMS AND INTERESTS

The Plan contemplates payment of all Allowed Claims against the Debtor utilizing the revenue from the ongoing operation of the Debtor's business to make the payments set forth therein. The holders of Membership Interests will be affected pursuant to the Plan.

### B. CLAIMS UNDER THE PLAN

The following is a summary of the classification and treatment of Claims under the Plan:

| Unclassified. Administrative Claims. To date, the Debtor has paid $560,000,00 in professional fees. It is believed an additional $150,000,00 will be needed to complete the case. | Unimpaired. Not entitled to vote. Subject to the bar date provisions herein, the Disbursing Agent shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date, or (b) the date such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment. On or before the Effective Date, all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash in full. Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims and substantial contribution claims must be filed no later than sixty (60) days after the Effective Date. Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to file a request for payment of such claims and that do not file such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other Person, or any of their respective property. Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims. All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contri-bution in the Reorganization Case or any creditor seeking recovery under 11 U.S.C. § 506(a)) shall file and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. If such claim is not filed, the professional or party seeking recovery under 11 U.S.C. § 506 shall be deemed to waive such claim. Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than |
|---|---|

| | professionals or other entities described above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to file any request for payment of such claims. Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.<br><br>Estimated percentage recovery: 100% |
|---|---|
| **Priority Tax Claims (Other than Class 2 Claims)**<br><br>Debtor estimates Priority Tax Claims at $6,000,000.00. | Unimpaired. Not entitled to vote.<br><br>Each holder of an Allowed Priority Tax Claim other than Class 2 Claim shall receive one of the following three treatments, as determined by the Reorganized Debtor in its sole and absolute discretion, on account of and in full satisfaction of such Allowed Priority Tax Claim: (a) Cash on the Effective Date, or on such other date on which such Priority Tax Claim becomes an Allowed Claim, in an amount equal to the amount of the Allowed Priority Tax Claim; (b) regular quarterly installment payments in Cash based upon the Amortization Period, plus interest at such annual rate as is determined in accordance with section 511 of the Bankruptcy Code, over a period ending not later than five (5) years after the Effective Date; or (c) on such other terms and conditions as agreed to by the Reorganized Debtor and the holder of the Allowed Priority Tax Claim. The Reorganized Debtor may prepay, without penalty, at any time any Allowed Priority Tax Claim treated in accordance with option (b) above.<br><br>Estimated percentage recovery: 100% |
| **Class 1 (Priority Non Tax Claims)**<br><br>Estimate $600,000.00 | Unimpaired. Deemed to have voted in favor of the Plan.<br><br>Class 1 is unimpaired under the Plan, and the holders of Priority Non Tax Claims are deemed to have voted in favor of the Plan. The Disbursing Agent shall pay each holder of an Allowed Priority Non Tax Claim against the Debtor on account of and in full satisfaction of such Allowed Priority Non Tax Claim, Cash equal to the amount of the Allowed Priority Non Tax Claim, on the later of: (a) the Effective Date, or (b) the date such Priority Non Tax Claim becomes an Allowed Priority Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Priority Non Tax Claim agrees to a different treatment.<br><br>Estimated percentage recovery: 100% |
| **Class 2 Claims (State and Local Priority Tax Claims)**<br><br>Estimate $400,000.00 | Unimpaired. Deemed to have voted in favor of the Plan.<br><br>Class 2 is unimpaired under the Plan, and the holders of Class 2 Claims are deemed to have voted in favor of the Plan. The Disbursing Agent shall pay each holder of an Allowed Class 2 Claim against the Debtor on account of and in full satisfaction of such Allowed Class 2 Claim in accordance with 11 U.S.C. § 1129(a)(9)(c), beginning on the later of: (a) the Effective Date, (b) the date such Class 2 Claim becomes an Allowed Class 2 Claim, or c) paid over five (5) years in quarterly installments in accordance with 11 U.S.C. § 511 and 11 U.S.C. § 1129(a)(9)(c).<br><br>Estimated percentage recovery: 100% |
| **Class 3 (Central Bank of St. Louis)** | Impaired. Entitled to Vote.<br><br>Class 3 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 3 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:<br><br>• <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor; |

| | |
|---|---|
| | • **Lien Retention**: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• **Lien Documents**: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $904,335.00<br>Proof of Claim Amount - $1,052,914.40<br><br>Estimate percentage recovery: 100% |
| **Class 4**<br>**(Citizens Bank)** | Impaired. Entitled to Vote.<br><br>Class 4 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 4 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. The outstanding balance due the Class 4 creditor shall be due and payable on the fifth anniversary of the Effective Date of the Plan. In addition:<br><br>• **No Prepayment Penalty**: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• **Lien Retention**: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• **Lien Documents**: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $918,350.00<br>Proof of Claim Amount – N/A<br><br>Estimated percentage recovery: 100% |
| **Class 5**<br>**(Community Bank)** | Impaired. Entitled to Vote.<br><br>Class 5 is impaired under the Plan, and the holders of the Secured Lender Claims are |

| | |
|---|---|
| | entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 5 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. The outstanding balance due the Class 5 creditor shall be due and payable on the fifth anniversary of the Effective Date of the Plan. In addition:<br><br>• <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $358,777.50<br>Proof of Claim Amount – N/A<br><br>Estimated percentage recovery: 100% |
| **Class 6**<br>**(Mack Financial Services)**<br>**and**<br>**Class 6A**<br>**(BOA)** | Impaired. Entitled to Vote.<br><br>Both Class 6 and Class 6A are impaired under the Plan, and each is the holder of a separate Secured Lender Claim and both the Class 6 and Class 6A creditors are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Classes 6 and 6A creditors shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:<br><br>• <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan. |

16-50876 - #587  File 06/06/17  Enter 06/06/17 17:31:31  Main Document  Pg 14 of 76

| | Class 6 | Class 6A |
|---|---|---|
| | Company's Books - $445,537.00 | Company's Books - 0 |
| | Proof of Claim Amount: | Proof of Claim Amount: |
| |   Secured - $444,675.00 |   Secured - $40,000.00 |
| |   Unsecured - $1,552.270.98 |   Unsecured - $298,075.63 |
| | Estimated percentage recovery: 100% | |

| | |
|---|---|
| **Class 7**<br>**(Mercedes Benz Financial Services)** | Impaired. Entitled to Vote.<br><br>Class 7 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 7 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:<br><br>    • <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>    • <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>    • <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $62,058.00<br>Proof of Claim Amount - $64,773.41<br><br>Estimated percentage recovery: 100% |
| **Class 8**<br>**(Siemens Financial Services, Inc.)** | Impaired. Entitled to Vote.<br><br>Class 8 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 8 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:<br><br>    • <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>    • <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>    • <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan. |

| | |
|---|---|
| | All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $1,324,049.00<br>Proof of Claim Amount – N/A<br><br>This creditor asserts that its claim is in the total amount of $1,424,355.33, less any adequate protection payments that have not previously been credited.<br><br>Estimated percentage recovery: 100% |
| **Class 9**<br>**(Wells Fargo Equipment**<br><br>**Finance)** | Impaired. Entitled to Vote.<br><br>Class 9 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 9 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. If the Class 9 creditor makes an 11 U.S.C. § 1111(b) election, such creditor shall be paid in accordance with the requirements of 11 U.S.C. § 1111(b). In addition:<br><br>• No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $17,412.00<br>Filed Proof of Claim Amount – $184,843.50<br>Wells Fargo asserts the value of its collateral is $81,500.00. The Debtor will agree that the Wells Fargo Class 9 claim is $81,500.<br>Secured Claim Recovery 100% |
| **Class 10**<br>**(Sterling National Bank)** | Impaired. Entitled to Vote.<br><br>Class 10 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 10 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:<br><br>• No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• Lien Retention: Secured Lender shall retain its liens on all of its Collateral |

| | |
|---|---|
| | (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $803,057.00<br>Proof of Claim Amount - $836,474.88<br><br>Estimated percentage recovery: 100% |
| **Class 11**<br>**(TCF Equipment Finance, Inc.)** | Impaired. Entitled to Vote.<br><br>Class 11 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 11 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the adequate protection stipulation entered into between the parties (Dkt. #329). In addition:<br><br>• No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $873,267.00<br>Proof of Claim Amount - $962,378.10<br><br>Estimated percentage recovery: 100% |
| **Class 12**<br>**(Caterpillar Financial Services)** | Impaired. Entitled to Vote.<br><br>Class 12 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 12 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition: |

| | |
|---|---|
| | • <u>No Prepayment Penalty</u>:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $7,677,801.50<br>Proof of Claim Amount – N/A<br><br>Estimated percentage recovery:  100% |
| **Class 13**<br>**(Cerny Real Estate Interests)** | Impaired.  Entitled to Vote.<br><br>Class 13 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan.  Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 13 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization.  The outstanding balance due the Class 13 creditor shall be due and payable on the fifth anniversary of the Effective Date of the Plan.  In addition:<br><br>• <u>No Prepayment Penalty</u>:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $854,000.00<br>Proof of Claim Amount – N/A<br><br>Estimated percentage recovery:  100% |
| **Class 14** | Impaired.  Entitled to Vote. |

| (Jeff Davis Bank) | Class 14 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 14 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:<br><br>• No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $30,654.85<br>Proof of Claim Amount – N/A<br><br>Estimated percentage recovery: 100% |
| **Class 15**<br>**(DeLage Landen Financial Services, Inc.)** | Impaired. Entitled to Vote.<br>Class 15 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 15 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:<br><br>• No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>• Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>• Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $7,763.894.00<br>Proof of Claim Amount - $9,836,933.31 |

| | |
|---|---|
| | Estimated percentage recovery: 100% |
| **Class 16 (Peoples United Equipment Finance)** | Impaired. Entitled to Vote.<br><br>Class 16 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 16 creditor shall receive monthly payments to satisfy its Allowed Claim at the rate embedded in the Adequate Protection Order (Dkt. #155) in accordance with the Secured Lender Amortization. In addition:<br><br>&bull; <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;<br><br>&bull; <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and<br><br>&bull; <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.<br><br>All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.<br><br>Company's Books - $501,568.00<br>Proof of Claim -\N/A<br><br>Estimated percentage recovery: 100% |
| **Class 17 (General Unsecured Claims)** | Impaired. Entitled to Vote.<br><br>Class 17 is impaired under the Plan, and the holders of Class 17 Claims are entitled to vote on the Plan. Each Allowed Class 17 creditor shall receive such creditor's pro-rata share of the Fund. The Allowed Class 17 creditors will receive their pro-rata share of the Fund based upon the following:<br><br>(a) an amortization of five (5) years;<br><br>(b) a final payment of all unpaid principal and interest of the Fund amount on the fifth anniversary of the Effective Date of the Plan; and<br><br>(c) quarterly payments with the first payment ninety (90) days after the Effective Date.<br><br>In addition, the Allowed Class 17 creditors will share pro-rata in the Class 17 Excess Payment on an annual basis.<br><br>Class 17 creditors may elect to accept on the Effective Date a cash payment equal to two percent (2%) of such creditor's Allowed Claim which amount shall be paid on the later of: (i) the Effective Date; or (ii) when such claim is allowed.<br><br>Estimated percentage recovery: The guaranteed recovery is 10%. It is believed the excess payment will return an additional seven percent (7%). It is assumed the unsecured claims total $15,000,000.00. |

The Claims and Claim amounts listed above are amounts estimated by the Debtor as of the filing of this Disclosure Statement and all such Claims are still being reviewed by the Debtor. A listing of Claims or any amounts with respect thereto above or elsewhere in this Disclosure Statement shall not constitute, or be deemed to constitute, allowance of such Claims and all such Claims and amounts are subject, and will remain subject, to challenge and objection by the Debtor and the Reorganized Debtor prior to voting on the Plan and at any time thereafter as provided in the Plan.

## C.     INTERESTS UNDER THE PLAN

The following is a summary of the classification and treatment of Interests under the Plan:

| Class 18 (Members) | Impaired.  Entitled to Vote. |
| --- | --- |
| | The interests of the current Members shall be reduced from one hundred percent (100%) to ninety-seven percent (97%) and Douglas Marcantel shall have a three percent (3%) interest.  A new operating agreement shall be executed by the post Effective Date members. |
| | Estimated percentage recovery: 100%. |

## D.     SECURED CLAIM OF AMEGY

| Class 19 (Amegy) | Impaired |
| --- | --- |
| | Class 19 is Impaired under the Plan and shall be entitled to vote to accept or reject the Plan. Amegy holds pre-petition and post-petition first priority liens and security interests against the Debtor based on the Amegy Financing Documents (defined herein) and the Amegy DIP Order (defined herein) (the "Amegy Secured Claim"). |
| | As of the Petition Date, Amegy had a significant secured Claim collateralized by the Amegy Collateral.  Subsequent to the Petition Date, pursuant to the Amegy DIP Order, the Court permitted the Debtor to enter into post-petition debtor-in-possession financing, as well as permitted the use of cash collateral to which Amegy's first priority liens and security interests attached.  As of the date of the filing of the Plan (March 8, 2017), the total post-petition obligation owed to Amegy is approximately $1,982,498.62, which said amount is subject to change from time to time as invoices are purchased and collected thereunder, and as fees and costs accrue thereunder, as provided in the Amegy Financing Documents.  Pursuant to Amegy DIP Order, Amegy was granted, among other things, a super-priority administrative expense claim and a perfected first priority security interest in the Amegy Collateral for any and all liabilities and obligations of the Debtor to Amegy arising from the Amegy DIP Order. |
| | The Amegy Secured Claim shall be deemed allowed as described above, and shall be paid in full pursuant to, and in accordance with, the Amegy Financing Documents and |

| | |
|---|---|
| | the Amegy DIP Order. Pursuant to the Plan, the Confirmation Order and any related documents (including, without limitation, a reaffirmation agreement), the Reorganized Debtor shall, as of the Effective Date, among other things: (1) continue operating under the Amegy Financing Documents on a post-confirmation basis, including, without limitation, administering the sale of its accounts receivable to Amegy, and to otherwise operate pursuant to, and in accordance with, the terms and conditions of the Amegy Financing Documents. In that regard, the Amegy Financing Documents, and all Obligations (as that term is defined in the Amegy DIP Order) arising therefrom or related thereto, hereby are deemed to be valid and binding obligations which are enforceable against the Reorganized Debtor and all related parties (as identified in the Amegy Financing Documents) in favor of Amegy; and (2) sell and assign its accounts receivable to Amegy on a post-confirmation basis, subject to the terms of the Amegy Financing Documents, the Plan, the Confirmation Order and any related documents (including, without limitation, a reaffirmation agreement), and to execute all documents, to the extent necessary, and take all actions in connection with, and in furtherance of, all undertakings and Obligations under the Amegy Financing Documents on a post-confirmation basis.<br><br>Estimated percentage recovery: 100%. |
| **Class 20**<br>**(Secured Taxing Authorities)** | Impaired. Entitled to Vote.<br><br>The claims of Secured Taxing Authorities shall be paid in full based upon an amortization equal to the numbers of quarters between the Effective Date and five (5) years from the Petition Date in quarterly installments with the first quarterly payment being made on the first business day of the first full three (3) months following the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the Effective Date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance from the Effective Date until the tax debt is paid in full.<br><br>In the event the Reorganized Debtor sells, conveys or transfers any of the properties which are collateral for the Class 20 claim and/or any post-petition/post confirmation tax debt, the Reorganized Debtor shall remit such sale proceeds first to the Class 20 creditor who possesses a lien on such property sold to be applied to such Class 20 creditor or creditors' tax debt incident to any such property sold, conveyed or transferred and such proceeds sale be disbursed by the closing agent at the time of closing; or if a title company does not perform the closing, said tax debt shall be paid by the Reorganized Debtor within fifteen (15) days of receipt of the sale proceeds and said disbursement (whether by the title company or the Reorganized Debtor) shall be made prior to any disbursement of the sale proceeds to any other person or entity.<br><br>Each Class 20 creditor shall retain its lien securing its pre-petition and post-petition tax debt until such time as the tax debt is paid in full. Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2017 and subsequent tax years) on all tax accounts owing to any Class 20 creditor in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of a Class 20 creditor to file an administrative expense claim and/or request for payment. The Reorganized Debtor may pre-pay the pre-petition tax debt owed to a Class 20 creditor at any time. Any of the following events shall constitute a default of this Plan:<br><br>**1.** Should the Reorganized Debtor fail to make any payments as required in this Plan; or<br><br>**2.** Failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt.<br><br>Should the Reorganized Debtor default, the Class 20 creditor who asserts that a default exists shall provide written notice of that default by sending written notice by certified mail to the Reorganized Debtor and Reorganized Debtor's counsel advising of that default, and providing the Reorganized Debtor with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, a Class 20 |

| | Creditor may, without further order of this Court or notice to the Reorganized Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than two (2) Notices of Default. In the event of a third (3rd) default, a Class 20 Creditor may pursue all rights and remedies available to it under applicable non bankruptcy law Code in state district court without further order of this court or further notice to the Reorganized Debtor. |
| | |
| | Estimated percentage recovery: 100% |
| **Class 21 (Toups)** | Impaired. Entitled to Vote. |
| | Class 21 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. The treatment of the Class 21 creditor shall receive monthly payments based upon the value of the Class 21 creditor's collateral, Secured Lender Plan Rate and Secured Lender Amortization. The outstanding balance due the Class 21 creditor shall be due and payable on the fifth anniversary of the Effective Date. In addition: |
| | • No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor; |
| | • Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and |
| | • Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan. |
| | Defaults: All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan. |
| | It is assumed that Toups has a secured claim of $100,000.00. |

# IV. GENERAL OVERVIEW AND BACKGROUND INFORMATION

## A. HISTORY OF DEBTOR

Debtor operates in three primary service lines: (i) maintained and operated cranes; (ii) construction/maintenance work; and (iii) millwright services. The crane division has offices in Eunice, Louisiana and Pleasanton, Texas. The construction/maintenance division has offices in Eunice, Louisiana, Monahans, Texas, Pleasanton, Texas and Marshall, Texas. The millwright

division is based in Alexandria, Louisiana, but, given the nature of the services provided, performs jobs throughout the United States, with a focus on Alaska's North Slope.

## B.    OWNERSHIP

Debtor was formed in 2002, when Ron Williams Construction spun its crane division into a separate entity called Louisiana Crane Company, LLC ("LCC" prior to the 2012 name change and Louisiana Crane & Construction, LLC thereafter).  Initially, Ron Williams owned seventy percent (70%) of LCC and Logan Fournerat owned thirty percent (30%).

In 2004, Fournerat & Toups Farms, L.L.C. (then owned by Logan Fournerat & Toups) purchased Ron Williams' seventy percent (70%) interest in LCC.  Mr. Fournerat has been the Managing Member of LCC since that time.

Based on the growth of its construction/maintenance division, in 2012, Louisiana Crane Company, LLC changed its name to *Louisiana Crane & Construction, LLC*.

In 2013, Fournerat Family LLC purchased Toups' interest in Fournerat & Toups Farms, L.L.C.  The two members of LCC are now Mr. Fournerat and Fournerat & Toups Farms, L.L.C.

## C.    OPERATIONAL HISTORY

From the time Logan Fournerat became CEO of LCC in 2004, its business grew from $4,500,000 and 35 employees, to its peak in 2013 of $258,000,000 in revenue and over 2,000 employees.  The majority of the work at that time was construction/maintenance work performed in the Eagleford Shale play, between the U.S./Mexico border and San Antonio.  However, this growth was not limited just to the Eagleford, and in fact occurred in varying degrees over its three primary divisions.  The background of each division is set forth below:

1.    *Crane Division:*

LCC started out as a Maintained and Operated Crane Company in 2002, working in South Louisiana. During its first few years of existence, LCC added the oilfield maintenance work service line, and its growth caused LCC to hire a division manager for this work in 2005, with the plan of further expanding this line of business.

In 2005, Louisiana Crane opened a yard in Dallas, Texas, followed in 2006 by its move into Houston, Texas, and in 2007 the opening of its yards in San Antonio and Corpus Christi, Texas. LCC maintained these crane operations until 2011, when it sold its Texas crane business to TNT Crane and Rigging ("TNT"). LCC continued to operate its crane business in South Louisiana.

As a condition of that sale, LCC agreed not to compete with TNT in the crane business in large portions of Texas. But, in 2014, when it's non-compete with TNT expired, LCC moved back into Texas. However, this time it focused on oilfield work, not metro work. That has proven to be a wise decision, as crane work in the Eagleford has remained steady in spite of the downturn in late 2014.

2. *Construction Division*:

With the hiring of a manager to oversee LCC's oilfield maintenance work, this service line began to grow by moving into pipeline and facility construction. Initially, LCC moved into North Louisiana working in the Haynesville Shale. In 2009, LCC was one of the first companies to operate in the Eagleford Shale. During the expansion of that play, LCC had offices in Pleasanton, Texas, Asherton, Texas, and a small yard in Crystal City. LCC has since closed the offices in Asherton and Crystal City. The Pleasanton office, while now primarily focused on crane-work, does continue to perform oilfield maintenance work on a much small scale.

LCC also maintains a small office in Marshall, Texas. That office performs T&M maintenance work for select clients in the area.

Further, in 2014, LCC opened a yard in Monahans, Texas, which is just west of the Midland/Odessa area. LCC continues to operate from that yard, primarily performing T&M maintenance work for its clients in the area.

3.    *Millwright Division*:

In 2005, LCC opened a Millwright division, whose initial focus was the ammonia industry. Yet, in 2008 the Millwrights began working for BP on the North Slope in Alaska. That work continues and comprises the majority of services performed by this division. Additionally, over the last 18-24 months, LCC's Millwright Division has picked up significant business in the Continental United States, and now has employees working jobs throughout the United States at any given time.

4.    *Water Hauling Operations:*

In 2012, LCC started a salt water hauling operation in the Eagleford Shale, with two minority partners, called Louisiana Liquid Services, LLC ("LLS"). LLS has since been wound down, as the volume of saltwater, and work, has fallen dramatically in the Eagleford. The failure of that business continues to be a drag on LCC.

5.    *IRS Claim:*

The IRS tax claim against the Debtor arises due to the fact that the Debtor failed to make payments of both taxes and trust funds in connection with employments taxes. Logan Fournerat has been found to be a responsible party and is personally liable for the claim.

## D.    RECAP OF CURRENT OPERATING ACTIVITIES

LCC continues to operate its three primary divisions. However, Maintained and Operated Cranes, followed by the Millwrights, are the divisions generating the majority of LCC's revenue, and in turn receive the majority of LCC's focus. The construction/maintenance division continues operations, although it is not expected to return to near the volume of business it had earlier this decade.

For the immediate future, LCC expects to continue operating out of offices in Eunice and Alexandria, Louisiana (Alexandria relating only to Millwrights), as well as Pleasanton and Monahans, Texas. The primary focus on the near and intermediate term will continue to be maintained and operated cranes, followed by Millwrights, and then construction/maintenance work.

## E.    SIGNIFICANT POST-PETITION EVENTS

In the course of the Chapter 11, a number of events occurred. The Debtor believes the following are the significant Chapter 11 events:

### 1.    Petition Date, Voluntary Petition and Withdrawal of Small Business Election.

On June 27, 2016, Debtor filed for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### 2.    Continuation of Business; Stay of Litigation.

Following the Petition Date, the Debtor has continued to operate as debtor-in-possession with the protection of the Bankruptcy Court. The Bankruptcy Court has certain supervisory powers over the Debtor's operations during the pendency of the Chapter 11 Case, including the power to approve any transactions that are outside the ordinary course of the Debtor's business.

An immediate effect of the filing of a bankruptcy case is the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoins the commencement or continuation of all litigation against the Debtor. This injunction will remain in effect until the Effective Date unless modified or lifted by order of the Bankruptcy Court.

### 3. Compliance with Bankruptcy Code, Bankruptcy Rules, Local Court Rules, and U.S. Trustee Guidelines for Region 5.

On August 1, 2016, the Debtor filed its Statement of Financial Affairs, Summary of Schedules, Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Lists of Equity Security Holders [ECF Dkt. #s 146 and 147]. On September 26, 2016, the Debtor filed an amended Statement of Financial Affairs [ECF Dkt. 303].

Pursuant to section 341 of the Bankruptcy Code, a meeting of creditors for the Debtor was held on July 25, 2016 [ECF Dkt. # 149] and continued until August 23, 2016.

The Debtor has filed Monthly Operating Reports for June 2016, July 2016, August 2016, September 2016, October 2016, November 2016, December 2016, and January 2017 [ECF Dkt. #s 181, 287, 324, 385, 387, 436, and 462].

United States Trustee's fees do not require allowance by the Court and both pre-confirmation and post-confirmation United States Trustee fees shall be paid timely and in full pursuant to all applicable provisions of the Bankruptcy Code and other statutory provisions. The Debtor shall also provide post-confirmation monthly disbursement information to the United States Trustee.

### 4. Debtor's Exclusivity Period to File a Plan of Reorganization.

Pursuant to section 1121(d)(1) of the Bankruptcy Code, the Debtor had until October 25, 2016, to file a plan of reorganization. On October 17, 2016, the Debtor filed a *Motion for an Order Extending the Time Periods Within Which the Debtor has the Exclusive Right to File a*

16-50876 - #587   File 06/06/17   Enter 06/06/17 17:31:31   Main Document   Pg 28 of 76

*Plan of Reorganization and to Obtain Acceptances of a Plan of Reorganization* [ECF Dkt. # 325]. On December 20, 2016, the Bankruptcy Court granted the extension and the Debtor's exclusivity period was extended until January 23, 2017 [ECF Dkt. # 394]. On January 23, 2017, the Debtor filed a second *Motion to Extend Time or Limit the Exclusivity Period* (ECF Dkt. #451) and an *Amended Motion to Extend Time or Limit the Exclusivity Period (Second)* (ECF Dkt. #452) requesting an extension of the Exclusivity Period for filing a Plan of Reorganization until March 15, 2017.

### 5. Real Estate Sale

On January 11, 2016, the Debtor filed *Bid Procedures* seeking the authority to sell 966 Hwy. 190 West, Section 33, T6S, R1W, Eunice, Louisiana consisting of 3.803 acres to John Eric Vizena for $300,000.00 or to the highest bidder [EFC Dkt. # 431]. The sale has closed and the proceeds paid to Community bank

### 6. Efforts to Obtain Financing or Equity Capital

The Debtor retained Three Rivers Capital to obtain either new financing or an equity investor. The offers received by the Debtor were not acceptable inasmuch as the funds offered would not provide a better return to creditors than that offered in the Plan. The financing proposals that were offered were at mezzanine financing rates that were well in excess of presumptive Till rates.

### 7. Auction of Excess Equipment and Results

Early in the Chapter 11 case, the Debtor conducted a complete review of its equipment in an effort to reduce debt through the sale of non-essential property. The Debtor filed a motion with the Bankruptcy Court requesting authority to sell certain cranes and moving stock. By Order of the Bankruptcy Court, the Debtor was authorized to sell the excess equipment.

Auctions of the equipment were conducted and a majority of the proceeds from the auctions was paid to the Debtor's Secured Lenders.

**7.  DIP Financing**.

Prior to the Petition Date, the Debtor and Amegy had a pre-petition financing arrangement, which among other things, provided for the purchase and sale of Debtor's accounts receivable to Amegy.  Amegy's pre-petition claims arose from the following agreements:

(1)  Pursuant to a Purchase and Sale Agreement/Security Agreement dated February 10, 2010 made by and among the Debtor and the Amegy, subject to and including that Amendment to Purchase and Sale Agreement/Security Agreement (Changing Name of Seller) dated May 7, 2012 (the "First Amendment"), that Second Amendment to Purchase and Sale Agreement/Security Agreement (Adding New Seller) dated June 23, 2016 (the "Second Amendment"), and that Amendment to Purchase and Sale Agreement/Security Agreement dated June 23, 2016 (the "Third Amendment") (together with the First Amendment, the Second Amendment, the Third Amendment and all future amendments, the "Amegy Agreement"), Amegy made advances of money to the Debtor, and that, as of the Petition Date, the aggregate amount due and payable by the Debtor to Amegy under the Amegy Agreement, equaled approximately $5,857,107.12 (the "Pre-petition Factoring Amount").  Over the course of the bankruptcy case, all of the invoices related to the Pre-petition Factoring Amount have been paid, and therefore the Pre-petition Factoring Amount has been satisfied in full.

(2)  Pursuant to a Commercial Card Program dated June 1, 2011 between Amegy and Louisiana Crane Co., L.L.C. (the "Pre-petition Credit Card Agreement"), the Debtor was indebted to Amegy in the approximate amount of $230,104.00.  Pursuant to that Amendment to Commercial Card Program Master Agreement dated April 11, 2016 (the "Pre-petition Credit

Card Agreement Amendment") the Debtor pledged a certificate of deposit as collateral for the Pre-petition Credit Card Agreement. As of the Petition Date, the certificate of deposit had a value of $250,000.00.

(3)　　Pursuant to a Guaranty dated August 17, 2012 (the "Liquid Services Guaranty") the Debtor agreed to guarantee the obligations of a non-debtor affiliated entity, Louisiana Liquid Services, L.L.C. ("Liquid Services"), including, without limitation, Liquid Services' obligations under that Security Agreement and Promissory Note dated January 24, 2014 (the "Liquid Services Equipment Note"). As of the Petition Date, the amount owed by Liquid Services under the Liquid Services Equipment Note was approximately $182,056.51. During the bankruptcy case, the Liquid Services Equipment Note was satisfied by Liquid Services in full, and such note has been terminated. Accordingly, the Liquid Services Guaranty is no longer a liability for the Debtor.

(4)　　Pursuant to the: (a) Guaranty dated February 9, 2010, Joseph Earl Toups (the "Toups Agreement") guaranteed repayment of the obligations of Debtor under the Amegy Agreement, (b) Guaranty dated February 9, 2010, Fournerat & Toups Farms, L.L.C. (the "Fournerat Agreement") guaranteed repayment of the obligations of Debtor under the Amegy Agreement, (c) Guaranty dated February 10, 2010, Logan Cass Fournerat (the "Logan Agreement") guaranteed repayment of the obligations of Debtor under the Amegy Agreement, and (d) Guaranty dated June 23, 2016, Louisiana Liquid Services, L.L.C. (the "LA Liquid Agreement," the Toups Agreement, the Fournerat Agreement, the Logan Agreement and the LA Liquid Agreement collectively referred to as the "Guaranty Agreements." The Guaranty Agreements, the Amegy Agreement, the Pre-petition Credit Card Agreement, the Pre-petition Credit Card Agreement Amendment and the Liquid Services Equipment Note collectively

referred to as the "<u>Amegy Financing Documents</u>") guaranteed repayment of the obligations of Debtor under the Amegy Agreement.

Pursuant to the Amegy Agreement, the Debtor granted Amegy a first priority lien on, and first priority security interest in, all right, title, and interest in such Debtor's accounts receivable, and other assets as detailed in the Amegy Agreement (the "<u>Amegy Collateral</u>").  Amegy properly perfected its security interests in, and liens upon, the Amegy Collateral.

Subsequent to the Petition Date, Amegy agreed to continue providing financing to the Debtor on a post-petition basis.  Pursuant to the Final Order (I) Approving Senior Secured Super-priority Post-Petition Financing Arrangement, (II) Use Of Cash Collateral, (III) Granting Security Interests And Super-Priority Administrative Expense Treatment, and (IV) Modifying The Automatic Stay entered by the Court on or about August 29, 2016 [Dkt No. 239] (the "<u>Amegy DIP Order</u>"), the Debtor was authorized to, among other things: (a) continue operating under the Amegy Financing Documents on a post-petition basis (in that regard, the Amegy Financing Documents were deemed effective and enforceable on a post-petition basis against the Debtor and related parties), (b) use Amegy's cash collateral on a post-petition basis on the terms and conditions referenced in the Amegy DIP Order, (c) grant certain replacement, substitute and/or additional liens, security interests and other relief for the benefit of Amegy with respect to certain cash collateral on deposit or to be deposited in one or more depository accounts maintained under the control of Amegy, and (d) grant post-petition first priority liens in, and security interests on, property of the bankruptcy estate, a super-priority administrative expense claim and other rights to secure payment of the Obligations (as defined in the Amegy DIP Order) incurred by Debtor under Amegy Financing Documents.  The Debtor estimates that approximately $1,982,498.62 is owed to Amegy as of [DATE OF Filing of Plan].

The Debtor has proposed, subject to certain terms and conditions referenced in the Plan, the Confirmation Order and any related documents (including, without limitation, a reaffirmation agreement), to continue selling its accounts receivable under the Amegy Financing Documents post-confirmation to finance, among other things, the working capital needs of the Reorganized Debtor. Amegy is willing to provide financing for Reorganized Debtor post-confirmation only by purchasing eligible accounts receivable of the Reorganized Debtor (pursuant to the terms of the Amegy Financing Documents), but only if the all Obligations (as that term is defined in the Amegy DIP Order) are allowed to be paid in full from the post-confirmation proceeds of the Amegy Collateral, and only upon the terms and conditions and with the protections provided in the Amegy Financing Documents, the Plan and any related documents (including, without limitation, a reaffirmation agreement). Amegy is relying on such terms, conditions and protections in agreeing to provide factoring to the Reorganized Debtor on a post-confirmation basis.

### 9. Pending Adversary Proceedings

The Debtor is a party to two (2) pending actions that are procedurally governed by the adversary proceeding rules B.R. 7001 *et seq.* The two cases are the following:

a) Litigation with DLL over the amount of its claim; and

b) An interpleader action regarding $166,066.99 in Funds held by Enterprise related to projects and/or work performed by the Debtor which could be subject to creditor claims styled as *Enterprise NGL Private Lines & Storage, LLC, Enterprise Crude Pipeline LLC, Acadian Gas Pipeline System, Enterprise Gas Processing, LLC, Enterprise Crude GP LLC, Enterprise Products Operating LLC, and Enterprise Products OLPGP, Inc. vs. Louisiana Crane & Construction, LLC, Tech Con*

*Trenching, Inc. and Foster Fence, Ltd.*, United State Bankruptcy Court, Western District of Louisiana Adversary Case No. 17-05008.

## V. THE PLAN

The Debtor has proposed the Plan and believes that the classification and treatment of Claims and Membership Interests provided for in the Plan are consistent with the requirements of the Bankruptcy Code. Under the Bankruptcy Code, holders of Allowed Claims against and Membership Interests in the Debtor that are Impaired and that receive distributions under the Plan are entitled to vote on the Plan. A summary of the classification and treatment of Claims and Interests under the Plan is set forth above in this Disclosure Statement.

### A.     TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

#### 1.     Administrative Claims.

##### a.     Generally.

Subject to the bar date provisions herein, the Disbursing Agent shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date, or (b) the date such Administrative Claim becomes an Allowed Administrative Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment.

##### b.     Payment of Statutory Fees.

On or before the Effective Date, all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash in full.

##### c.     Bar Date For Administrative Claims.

Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative

Claims and substantial contribution claims must be filed no later than sixty (60) days after the Effective Date. Holders of Administrative Claims (including, without limitation, any governmental units asserting claims for federal, state, or local taxes) that are required to file a request for payment of such claims and that do not file such requests by such bar date shall be forever barred from asserting such claims against the Debtor, Reorganized Debtor, any other Person, or any of their respective property.

Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

### i. Professionals.

All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case or any creditor seeking recovery under 11 U.S.C. § 506(a)) shall file and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. If such claim is not filed, the professional or party seeking recovery under 11 U.S.C. § 506 shall be deemed to waive such claim.

### ii. Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date (other than professionals or other entities described in subparagraph (ii) above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to file any request for payment of such claims. Such Administrative Claims shall be assumed and paid by the Reorganized Debtor in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.

### 2. Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim other than Class 2 claim shall receive one of the following three treatments, as determined by the Reorganized Debtor in its sole and absolute discretion, on account of and in full satisfaction of such Allowed Priority Tax Claim: (a) Cash on the Effective Date, or on such other date on which such Priority Tax Claim becomes an Allowed Claim, in an amount equal to the amount of the Allowed Priority Tax Claim; (b) regular quarterly installment payments in Cash based upon the Amortization Period, plus interest at such annual rate as is determined in accordance with section 511 of the Bankruptcy Code, over a period ending not later than five (5) years after the Effective Date; or (c) on such other terms and conditions as agreed to by the Reorganized Debtor and the holder of the Allowed Priority Tax Claim. Holders of Priority Tax Claims shall not be entitled to receive any payment on account of penalties with respect to or arising in connection with, such Priority Tax Claims. The Reorganized Debtor may prepay, without penalty, at any time any Allowed Priority Tax Claim treated in accordance with option (b) above.

### B. TREATMENT OF CLASSIFIED CLAIMS UNDER THE PLAN

### 1. Class 1 (Priority Non Tax Claims).

Class 1 is unimpaired under the Plan, and the holders of Priority Non Tax Claims are deemed to have voted in favor of the Plan. The Disbursing Agent shall pay each holder of an Allowed Priority Non Tax Claim against the Debtor on account of and in full satisfaction of such Allowed Priority Non Tax Claim, Cash equal to the amount of the Allowed Priority Non Tax Claim, on the later of: (a) the Effective Date, or (b) the date such Priority Non Tax Claim becomes an Allowed Priority Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Priority Non Tax Claim agrees to a different treatment.

### 2. Class 2 (State and Local Priority Tax Claims).

Class 2 is unimpaired under the Plan, and the holders of Class 2 Claims are

deemed to have voted in favor of the Plan. The Disbursing Agent shall pay each holder of an Allowed Class 2 Claim against the Debtor on account of and in full satisfaction of such Allowed Class 2 Claim in accordance with 11 U.S.C. § 1129(a)(9)(c), beginning on the later of: (a) the Effective Date, (b) the date such Class 2 Claim becomes an Allowed Class 2 Claim, or c) paid over five (5) years in quarterly installments in accordance with 11 U.S.C. § 511 and 11 U.S.C. § 1129(a)(9)(c).

3.     **Class 3 (Central Bank of St. Louis).**

Class 3 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 3 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

***Defaults:*** All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

4.     **Class 4 (Citizens Bank).**

Class 4 is impaired under the Plan, and the holders of the Secured Lender Claims

are entitled to vote on the Plan.  Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 4 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization.  The outstanding balance due to the Class 4 creditor shall be due and payable on the fifth anniversary of the Effective Date.  In addition:

- No Prepayment Penalty:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- Lien Retention:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- Lien Documents:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:*  All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

5.    **Class 5 (Community Bank).**

Class 5 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan.  Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 5 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization.  The outstanding balance due the Class 5 creditor shall be due and payable on the fifth anniversary of the Effective Date of the Plan.  In addition:

- <u>No Prepayment Penalty</u>:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:*  All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

6.      **Class 6 (Mack Financial Services).**

Both Class 6 and Class 6A are impaired under the Plan, and each is the holder of a separate Secured Lender Claim and both the Class 6 and Class 6A creditors are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Classes 6 and 6A creditors shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization.  In addition:

- <u>No Prepayment Penalty</u>:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- Lien Documents:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:*  All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

7.      **Class 7 (Mercedes Benz Financial Services).**

Class 7 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan.  Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 7 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization.  In addition:

- No Prepayment Penalty:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- Lien Retention:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- Lien Documents:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:*  All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

8.      **Class 8 (Siemens Financial Services, Inc.).**

Class 8 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 8 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 9. Class 9 (Wells Fargo Equipment Finance).

Class 9 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 9 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. If the Class 9 creditor makes an 11 U.S.C. § 1111(b) election, such creditor shall be paid in accordance with the requirements of 11 U.S.C. § 1111(b). In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 10. Class 10 (Sterling National Bank).

Class 10 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 10 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

**Defaults:** All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

11.    **Class 11 (TCF Equipment Finance, Inc.).**

Class 11 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 11 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the adequate protection stipulation entered into between the parties (Dkt. #329). In addition:

- No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

**Defaults:** All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

12.    **Class 12 (Caterpillar Financial Services).**

Class 12 is impaired under the Plan, and the holders of the Secured Lender Claims

are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 12 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

     ***Defaults:***  All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

     **13.**    **Class 13 (Cerny Real Estate Interests).**

     Class 13 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 13 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. The outstanding balance due to the Class 13 creditor shall be due and payable on the fifth anniversary of the Effective Date. In addition:

- <u>No Prepayment Penalty</u>:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

  ***Defaults:***  All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

  **14. Class 14 (Jeff Davis Bank).**

  Class 14 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan.  Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 14 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization.  In addition:

- <u>No Prepayment Penalty</u>:  The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>:  Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan.  The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>:  The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

  ***Defaults:***  All defaults and events of default existing as of the Petition Date and as

of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 15. Class 15 (DeLage Landen Financial Services, Inc.).

Class 15 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 15 creditor shall receive monthly payments to satisfy its Allowed Claim at the Secured Lender Plan Rate in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

***Defaults:*** All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 16. Class 16 (Peoples United Equipment Finance).

Class 16 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. Beginning on the Payment Commencement Date as set forth in Article VI, Paragraph Z of the Plan, the Class 16 creditor shall receive monthly

payments to satisfy its Allowed Claim at the rate embedded in the Adequate Protection Order (Dkt. #155) in accordance with the Secured Lender Amortization. In addition:

- <u>No Prepayment Penalty</u>: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- <u>Lien Retention</u>: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

- <u>Lien Documents</u>: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived as well as any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

### 17. Class 17 (General Unsecured Claims).

Class 17 is impaired under the Plan, and the holders of Class 17 Claims are entitled to vote on the Plan. Each Allowed Class 17 creditor shall receive such creditor's pro-rata share of the Fund. The Allowed Class 17 creditors will receive their pro-rata share of the Fund based upon the following:

(a) an amortization of five (5) years;

(b) a final payment of all unpaid principal and interest of the Fund amount on the fifth anniversary of the Effective Date of the Plan; and

(c) quarterly payments with the first payment ninety (90) days after the Effective Date of the Plan.

In addition, the Allowed Class 17 creditors will share pro-rata in the Class 17 Excess Payment on an annual basis.

Class 17 creditors may elect to accept on the Effective Date a cash payment equal to two percent (2%) of such creditor's Allowed Claim which amount shall be paid on the later of: (i) the Effective Date; or (ii) when such claim is allowed.

## C.    TREATMENT OF INTERESTS UNDER THE PLAN

### 18.    Class 18 (Members).

Class 18 is impaired under the Plan.  The interests of the current Members shall be reduced from one hundred percent (100%) to ninety-seven percent (97%) and Douglas Marcantel shall have a three percent (3%) interest.  A new operating agreement shall be executed by the post Effective Date members.

## D.    SECURED CLAIM OF AMEGY.

Class 19 is impaired. Amegy holds pre-petition and post-petition first priority liens and security interests against the Debtor based on the Amegy Financing Documents and the Amegy DIP Order and is entitled to vote on the Plan.

As of the Petition Date, Amegy had a significant secured Claim collateralized by the Amegy Collateral.  Subsequent to the Petition Date, pursuant to the Amegy DIP Order, the Court permitted the Debtor to enter into post-petition debtor-in-possession financing, as well as permitted the use of cash collateral to which Amegy's first priority liens and security interests attached.  As of the date of the filing of the Plan (March 8, 2017), the total post-petition obligation owed to Amegy is approximately $1,982,498.62, which said amount is subject to change from time to time as invoices are purchased and collected thereunder, and as fees and costs accrue thereunder, as provided in the Amegy Financing Documents.  Pursuant to Amegy DIP Order, Amegy was granted, among other things, a super-priority administrative expense claim and a perfected first priority security interest in the Amegy Collateral for any and all

liabilities and obligations of the Debtor to Amegy arising from the Amegy DIP Order.

The Amegy Secured Claim shall be deemed allowed as described above, and shall be paid in full pursuant to, and in accordance with, the Amegy Financing Documents and the Amegy DIP Order. Pursuant to the Plan, the Confirmation Order and any related documents (including, without limitation, a reaffirmation agreement), the Reorganized Debtor shall, as of the Effective Date, among other things: (1) continue operating under the Amegy Financing Documents on a post-confirmation basis, including, without limitation, administering the sale of its accounts receivable to Amegy, and to otherwise operate pursuant to, and in accordance with, the terms and conditions of the Amegy Financing Documents. In that regard, the Amegy Financing Documents, and all Obligations (as that term is defined in the Amegy DIP Order) arising therefrom or related thereto, hereby are deemed to be valid and binding obligations which are enforceable against the Reorganized Debtor and all related parties (as identified in the Amegy Financing Documents) in favor of Amegy; and (2) sell and assign its accounts receivable to Amegy on a post-confirmation basis, subject to the terms of the Amegy Financing Documents, the Plan, the Confirmation Order and any related documents (including, without limitation, a reaffirmation agreement), and to execute all documents, to the extent necessary, and take all actions in connection with, and in furtherance of, all undertakings and Obligations under the Amegy Financing Documents on a post-confirmation basis.

E.     SECURED TAXING AUTHORITIES.

Class 20 is impaired. The claims of Secured Taxing Authorities shall be paid in full based upon an amortization equal to the numbers of quarters between the Effective Date and five (5) years from the Petition Date in quarterly installments with the first quarterly payment being made on the first business day of the first full three (3) months following the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the Effective Date. Thereafter, plan interest at the rate of

twelve percent (12%) per annum shall accrue on the entire balance from the Effective Date until the tax debt is paid in full.

In the event the Reorganized Debtor sells, conveys or transfers any of the properties which are collateral for the Class 20 claim and/or any post-petition/post confirmation tax debt, the Reorganized Debtor shall remit such sale proceeds first to the Class 20 creditor who possesses a lien on such property sold to be applied to such Class 20 creditor or creditors' tax debt incident to any such property sold, conveyed or transferred and such proceeds sale be disbursed by the closing agent at the time of closing; or if a title company does not perform the closing, said tax debt shall be paid by the Reorganized Debtor within fifteen (15) days of receipt of the sale proceeds and said disbursement (whether by the title company or the Reorganized Debtor) shall be made prior to any disbursement of the sale proceeds to any other person or entity.

Each Class 20 creditor shall retain its lien securing its pre-petition and post-petition tax debt until such time as the tax debt is paid in full. Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2017 and subsequent tax years) on all tax accounts owing to any Class 20 creditor in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of a Class 20 creditor to file an administrative expense claim and/or request for payment. The Reorganized Debtor may pre-pay the pre-petition tax debt owed to a Class 20 creditor at any time. Any of the following events shall constitute a default of this Plan:

1.      Should the Reorganized Debtor fail to make any payments as required in this Plan; or

2.     Failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt.

Should the Reorganized Debtor default, the Class 20 creditor who asserts that a default exists shall provide written notice of that default by sending written notice by certified mail to the Reorganized Debtor and Reorganized Debtor's counsel advising of that default, and providing the Reorganized Debtor with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, a Class 20 Creditor may, without further order of this Court or notice to the Reorganized Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than two (2) Notices of Default. In the event of a third (3rd) default, a Class 20 Creditor may pursue all rights and remedies available to it under applicable non bankruptcy law Code in state district court without further order of this court or further notice to the Reorganized Debtor.

**F.     TOUPS.**

Class 21 is impaired under the Plan, and the holders of the Secured Lender Claims are entitled to vote on the Plan. The treatment of the Class 21 creditor shall receive monthly payments based upon the value of the Class 21 creditor's collateral, Secured Lender Plan Rate and Secured Lender Amortization. The outstanding balance due the Class 21 creditor shall be due and payable on the fifth anniversary of the Effective Date. In addition:

- •     No Prepayment Penalty: The Secured Lender's Claim may be prepaid in full at any time by the Reorganized Debtor;

- •     Lien Retention: Secured Lender shall retain its liens on all of its Collateral (as defined in the Secured Lender Loan Documents) to the same extent and priority that such liens enjoyed prior to the Debtor's filing for bankruptcy and/or pursuant to the Court Orders in the Debtor's bankruptcy case until Secured Lender's Claim is satisfied in full pursuant to the terms of the Plan. The documents in favor of the Secured

Lender shall be binding on the Reorganized Debtor except as modified pursuant to this Plan; and

• Lien Documents: The existing documents creating the security interest of the Secured Lender shall stay in full force and effect except as modified pursuant to this Plan.

*Defaults:* All defaults and events of default existing as of the Petition Date and as of the Effective Date against the Debtor and the Reorganized Debtor shall be waived and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan.

## G.  MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### 1.  Effective Date.

The "Effective Date" of this Plan shall be the first business day selected by the Debtor that is after the Confirmation Date and upon which all conditions to the effectiveness of this Plan have been satisfied or waived as provided for below, but no event shall the Effective Date be later than thirty (30) days after the Confirmation Order is a final order.

### 2.  Effective Date Conditions.

Notwithstanding any other provision of this Plan, the Effective Date shall not occur until each of the following conditions have been either (a) satisfied (or satisfied contemporaneously with the Effective Date) or (b) waived by the Debtor.  The Confirmation Order, approved in form and substance satisfactory to the Debtor becomes a final non-appealable Order.

### 3.  Revesting of Assets and Operations of Property.

Except as otherwise set forth herein, the Secured Lender Loan Documents, or in the Confirmation Order, as of the Effective Date, all property of the Estate (including debtor in

possession bank accounts, Cash held by any receiver, custodian or similar person or entity, insurance policies, including title insurance, and all rights of the Debtor thereunder, and the retained claims and Causes of Action) shall revest in the Reorganized Debtor free and clear of all claims, liens, encumbrances and other interests of creditors and holders of interests. From and after the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

### 4. Funding of the Plan.

The Cash required to be distributed under the Plan to the holders of Allowed Administrative Claims and Allowed Claims on the Effective Date (or on such later date when such Claims become Allowed Claims) shall be provided by (i) the Cash held by the Debtor on the Effective Date and (ii) the Reorganized Debtor's operations.

### 5. Disbursing Agent.

Subject to the approval of the Bankruptcy Court, the Reorganized Debtor, or such other entity as the Reorganized Debtor may employ, shall act as Disbursing Agent under the Plan and make all distributions required under the Plan. Unless otherwise required, the Disbursing Agent shall serve without bond.

Only the Reorganized Debtor shall be entitled to object to Claims and Interests. Any objections to Claims and Interests shall be served and filed on or before the later of: (i) sixty (60) days after the Effective Date; (ii) thirty (30) days after a request for payment or proof of

Claim or Interest is timely filed and properly served; or (iii) such other date as may be fixed by the Bankruptcy Court, whether before or after the dates specified in subsections (i) and (ii) herein, upon motion of the Reorganized Debtor. Notwithstanding any authority to the contrary, an objection to a Claim or Interest shall be deemed properly served on the Creditor if service is effected in any one of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on any counsel that has appeared on the Creditor's or Interest holders' behalf in the Reorganization Case; or (c) by first class mail, postage prepaid, on the signatory on the proof of Claim or Interest or other representative identified in the proof of Claim or Interest or any attachment thereto.

The Reorganized Debtor may object to or settle, without Court approval, any Administrative Claim. Any objections to Administrative Claims shall be served and filed on or before the later of: (i) forty-five (45) days after the Effective Date; (ii) thirty (30) days after a request for payment or allowance of an Administrative Claim is timely filed and properly served; or (iii) such other date as may be fixed by the Bankruptcy Court, whether before or after the dates specified in subsections (i) and (ii) herein.

**6. Disputed Claims.**

Pending resolution of a Disputed Claim, all Cash to be distributed to the holder of the Disputed Claim shall be placed in a segregated bank account at a federally insured financial institution and maintained by the Disbursing Agent until distribution to the holder of such Claim under the Plan. Distribution shall be made only from the Disputed Claims reserve and only at such time as a particular Claim is determined to be an Allowed Claim. The holder of a Disputed Claim that is ultimately allowed shall have no recourse against the Reorganized Debtor or its property for the payment of its Allowed Claim. No interest shall accrue or will be paid with

respect to any Disputed Claim for the period from the Effective Date to the date a distribution, if any, is made with respect to said Disputed Claim upon becoming an Allowed Claim. To the extent that a Disputed Claim ultimately is disallowed or allowed in an amount less than the amount of the reserves for such Disputed Claim, any resulting surplus in the reserve shall be transferred from the reserve to the Reorganized Debtor.

### 7. Discharge Of Debtor And Injunction.

Except as otherwise provided herein, the rights afforded in the Plan and the treatment of all Claims and Membership Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Membership Interests of any nature, whatsoever, including, any interest accrued on such claims from and after the Petition Date against the Debtor, the Debtor in Possession, or any of their assets or properties. Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date: (i) the Debtor shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code from all claims and interests, including claims and interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code whether or not: (a) a proof of claim or proof of interest based on such debt or interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a claim or interest based on such debt or interest is allowed pursuant to section 502 of the Bankruptcy Code, or (c) the holder of a claim or interest based on such debt or interest has

accepted the Plan; and (ii) all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, their successors, or their respective assets or properties any other or future claims or interests based upon any act or omission, transaction, or other activity of any kind or nature relating to the Debtor or the Debtor-in-Possession that occurred before the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code on and after the Effective Date, all Persons who have held, currently hold or may hold a debt, claim, or interest discharged under this Plan are permanently enjoined from taking any of the following actions on account of any such discharge, debt, claim, or interest: (1) commencing or continuing in any manner any action or other proceeding against the Debtor, the Reorganized Debtor, their successors, or their respective properties; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor, Reorganized Debtor their successors, or their respective properties; (3) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, Reorganized Debtor, their successors, or their respective properties; (4) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, Reorganized Debtor, their successors, or their respective properties; and (5) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order. Any Person injured by any willful violation of such injunction may recover actual damages, including costs

and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

## 8. Exculpation and Limitation of Liability.

On or after the Effective Date, none of the Debtor, the Debtor in Possession, the Reorganized Debtor or any of their respective employees, officers, directors, partners, members, managers, agents, or representatives shall have or incur any liability to any Person, and are hereby released from any such liability or any claims or causes of action related thereto, for any act taken or omission made in connection with, relating to, or arising out of (i) the Reorganization Case, (ii) the negotiation, formulation and filing of the Plan, and any contract, instrument, release, or other agreement or document created in connection with the Plan, including the Membership Agreement, (iii) the negotiation, preparing, filing and dissemination of the Disclosure Statement and the solicitation of votes on, or funds for, the Plan, (iv) confirmation of the Plan, and (v) the consummation and administration of the Plan, or distribution of any property under the Plan that does not arise from intentional misconduct or gross negligence as determined under applicable law.

## 9. Execution of Documents and LLC Action.

The Debtor and Debtor in Possession, on behalf of themselves, and the Reorganized Debtor, shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

**10.    Retention of Jurisdiction.**

After Confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

1.    To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

2.    To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

3.    To determine the extent, validity, and priority of any lien asserted against property of the Reorganized Debtor or property of the Estate;

4.    To construe and to take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, and the Confirmation Order and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Reorganization Case on or before the Effective Date with respect to any Person;

5.    To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or

before the Effective Date;

6.      To determine any other request for payment of administrative expenses;

7.      To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan and the Confirmation Order;

8.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

9.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the Reorganization Case whether before, on, or after the Effective Date;

10.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

11.     To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

12.     Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan and the Confirmation Order or the execution or implementation by any Person;

13.     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

14.     To enter a final decree closing the Reorganization Case; and

15.     To issue such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules.

**11.     Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such entity.

**12.     Amendment, Modification, and Severability.**

1.     This Plan, as well as the form of the Membership Agreement, may be amended or modified before the Effective Date by Debtor to the extent provided by section 1127 of the Bankruptcy Code.

2.     The Debtor reserves the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan, as it is currently drafted, is not confirmable pursuant to section 1129 of the Bankruptcy Code to the extent such a modification or amendment is permissible under section 1127 of the Bankruptcy Code without the need to re-solicit consents, and the Debtor reserves the right to sever any provisions that the Bankruptcy Court finds

objectionable.

## VI.  CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and certain U.S. holders of Claims and Interests.

The following summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date hereof.  Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section.  Certain tax aspects of the Plan are uncertain due to the lack of applicable regulations and other tax precedent.  The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan.  Thus, no assurance can be given as to the interpretation that the IRS will adopt.

TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND ANY INTERESTS ARE HEREBY NOTIFIED THAT (a) ANY DISCUSSION OF TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE TAX CODE, AND (b) THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE PROMOTION OF THE PLAN.

HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT THEIR TAX ADVISOR TO DETERMINE THE AMOUNT AND TIMING OF ANY INCOME OR LOSS SUFFERED AS A RESULT OF THE CANCELLATION OF THE CLAIMS OR STOCK OPTIONS HELD BY SUCH PERSON, WHETHER SUCH INCOME OR LOSS IS ORDINARY OR CAPITAL AND THE TAX EFFECT OF ANY RIGHT TO, AND RECEIPT OF DEFERRED PAYMENT.

THE ABOVE DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, ALL HOLDERS SHOULD CONSULT THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

The Debtor is a conduit entity and, as such, pays no taxes. The plan treatment of the Debtor's assets generates a potential tax event for the equity holders of the Debtor. The tax event can be a gain or loss depending on the equity owner's basis in the Membership and the gain or loss can either be a capital gain or ordinary income depending on the individual's treatment of the investment in the Debtor.

## VII. LIQUIDATION ANALYSIS UNDER CHAPTER 7

Under the Bankruptcy Code, in order for a plan to be confirmed, each creditor must receive or retain under the Plan a recovery that has a value at least equal to the value of the distribution that such creditor would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

Pursuant to the Debtor's liquidation analysis, the Debtor believes that recoveries under a Chapter 7 liquidation scenario would be significantly lower than that proposed by the Plan for a

variety of reasons. First, the sale of the Debtor's primary asset under a compressed timeframe and the distressed nature of a Chapter 7 liquidation will most likely result in lower sale values than the Debtor will receive under the terms of the Plan due to the lack of liquidity in today's market. Second, the conversion of the case to Chapter 7 liquidation would necessitate the payment of fees to the Chapter 7 Trustee, and attorneys, accountants and other professionals retained by the Chapter 7 Trustee, for disposition of the assets. These fees directly reduce any recovery otherwise available to creditors and/or the holders of Membership Interests.

Accordingly, each holder of a Claim will receive or retain under the Plan a recovery that has a value at least equal to the value of the distribution that such creditor would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

In addition, all trade creditors are being paid in full, all persons with equity interests have an option to share in the profits and upside of the Reorganized Debtor.

## VIII. CONFIRMATION PROCEDURE

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

## A. VOTING AND OTHER PROCEDURES

A Ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement submitted to the holders of Claims that are entitled to vote to accept or reject the Plan. Each holder of a Claim in Classes 3-17, 19 and 20 shall be entitled to vote to accept or reject the Plan and each holder of an Interest in Class 18 shall be entitled to vote to accept or reject the Plan. Each holder of a Claim in Classes 1 and 2 are deemed to have accepted the Plan.

Pursuant to Bankruptcy Rule 3018(a), a Claim or Interest that is Disallowed or which is disputed or objected to will not be counted for purposes of voting on the Plan to the extent it is disputed, unless the Court enters an order temporarily allowing the Claim or Interest for voting purposes under Bankruptcy Rule 3018(a). Such disallowance for voting purposes is without

16-50876 - #587  File 06/06/17  Enter 06/06/17 17:31:31  Main Document  Pg 63 of 76

prejudice to the claimant's or interest holder's right to seek to have its Claim or Interest, as the case may be, allowed for purposes of distribution under the Plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (i) Claims, as acceptance by creditors actually voting in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims; and (ii) Interests, as acceptance by interest holders in that class actually voting that hold at least two-thirds in amount of the Interests in a debtor.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or otherwise in accordance with the provisions of the Bankruptcy Code.

An impaired class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Claims actually voting in such class have voted to accept the Plan, and (b) more than one-half in number of the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of such Claims actually voting in such class have voted to accept the Plan.

An impaired class of Membership Interests shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Interests actually voting in such class have voted to accept the Plan.

With respect to the Plan, any holder of a Claim in an Impaired Class (i) whose Claim has been listed by the Debtor in the Schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated), or (ii) who filed a proof of claim on or before the applicable bar date (or, if not filed by such date, any proof of claim

filed within any other applicable period of limitations or with leave of the Bankruptcy Court), which Claim has not been disallowed and is not the subject of an objection, is entitled to vote. Holders of Claims that are disputed, contingent and/or unliquidated are entitled to vote their Claims only to the extent that such Claims are Allowed for the purpose of voting pursuant to an order of the Bankruptcy Court. The Debtor may seek a determination that any Class of Claims that is entitled to vote to accept or reject the Debtor's Plan that does not vote to accept or reject the Debtor's Plan be deemed to accept the Plan, as applicable.

After carefully reviewing this Disclosure Statement, including any exhibits, each holder of an Allowed Claim or Membership Interest entitled to vote may vote whether to accept or reject the Debtor's Plan. A Ballot for voting on the Plan accompanies this Disclosure Statement. If you hold a Claim or Membership Interest in more than one Class and you are entitled to vote Claims or Membership Interests in more than one Class, you may receive a Ballot or Ballots, which will permit you to vote in all appropriate Classes of Claims. Please vote and return your Ballot to Heller, Draper, Patrick, Horn & Dabney, LLC as follows, whether by U.S. mail, or by hand delivery or courier service:

> **Heller, Draper, Patrick, Horn & Dabney, LLC**
> **Attention: Douglas S. Draper**
> **650 Poydras Street, Suite 2500**
> **New Orleans, LA 70130**

ANY EXECUTED BALLOT THAT FAILS TO INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED. BALLOTS RETURNED TO THE HELLER, DRAPER, PATRICK, & HORN, LLC BY FACSIMILE TRANSMISSION OR ANY OTHER ELECTRONIC MEANS WILL NOT BE COUNTED.

```
┌─────────────────────────────┐
│    THE VOTING DEADLINE IS    │
│     5:00 P.M., CENTRAL       │
│       TIME ZONE, ON          │
│       _____.           │
└─────────────────────────────┘
```

APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN. ALL CREDITORS THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.

**Ballots must be *received* by Heller, Draper, Patrick, Horn & Dabney, L.L.C. by the Voting Deadline.** If a Ballot is received after the Voting Deadline, it will not be counted. Complete the Ballot by providing all the information requested, and sign, date and return the Ballot by mail, overnight courier or personal delivery to Heller, Draper, Patrick, Horn & Dabney, LLC at the address set forth above.

TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN THE TIME AND DATE SET FORTH IN THE ACCOMPANYING NOTICE.

ANY OBJECTIONS TO THE CONFIRMATION OF THE PLAN MUST BE FILED IN ACCORDANCE WITH AND NO LATER THAN THE TIME AND DATE SET FORTH IN THE ACCOMPANYING NOTICE.

If you are entitled to vote on the Plan and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the procedures for voting on the Plan, please telephone the Voting Agent at the following telephone number: **1-504-299-3351**.

## B.     DISCLAIMERS AND ENDORSEMENTS

This Disclosure Statement contains information about the Debtor's Plan. Holders of Claims and Membership Interests are urged to study the text of the Plan carefully to determine the impact of the Plan on their Claims or Membership Interests and to consult with their financial, tax and legal advisors.

Nothing contained in this Disclosure Statement or the Plan will be deemed an admission or statement against interest that can be used against the Debtor in any pending or future litigation. Any reference to creditors or Claims or Membership Interests in this Disclosure Statement is not an admission with respect to the existence, ownership, validity, priority, or extent of any alleged Lien, Claim, Membership Interest or encumbrance.

Certain statements and assertions in this Disclosure Statement may be subject to dispute by parties in interest.

## C.     THE CONFIRMATION HEARING

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing with respect to the Plan. The Confirmation Hearing in respect of the Plan has been scheduled for the date and time set forth in the accompanying notice before the United States Bankruptcy Judge, at the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division, 214 Jefferson Street, Suite 100, Lafayette, Louisiana 70501. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice other than an announcement of the adjourned date made at the Confirmation Hearing or posted at the courthouse at the Confirmation Hearing or at an adjournment thereof. Any objection to confirmation (i) must be made in writing, (ii) must specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim or a description of the interest in the Debtor held by the objector, and (iii) must be timely made. Any

such objections must be filed with the Bankruptcy Court and served so that they are received by the Bankruptcy Court, and the following counsel, on or before the date and time set forth in the accompanying notice:

**Counsel for Debtor:**

Heller, Draper, Patrick, Horn & Dabney, L.L.C.
Douglas S. Draper, La. Bar Roll No 5073
Leslie A. Collins, La. Bar Roll No. 14891
Greta M. Brouphy, La Bar Roll No. 26216
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
Telephone: (504) 299-3300
Fax: (504) 299-3399

## D.    CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are that the plan is (i) accepted by all Impaired Classes of Claims or, if rejected by an Impaired Class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, (ii) feasible, and (iii) in the "best interests" of creditors that are Impaired under the Plan.

## E.    UNFAIR DISCRIMINATION AND FAIR AND EQUITABLE TESTS

Under the Bankruptcy Code, a plan does not have to be accepted by every class of creditors or interest holders to be confirmed.  If a class of claims rejects a plan or is deemed to reject a plan, the plan proponent has the right to request confirmation of the plan pursuant to Section 1129(b) of the Bankruptcy Code the so-called "cramdown" provision of the Bankruptcy Code.  Section 1129(b) permits the confirmation of a plan notwithstanding the non-acceptance of such plan by one or more impaired classes of claims and interests.  Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and

16-50876 - #587  File 06/06/17  Enter 06/06/17 17:31:31  Main Document    Pg 68 of 76

equitable" with respect to each non-accepting class, and meets the other legal criteria for confirmation.

In the event that any Class of Claims or Interests fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and/or (b) modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

### 1.  Secured Creditors

The Secured Creditors with the exception of Classes 6, 6A and 9 are being paid in full under the Plan.

### 2.  Unsecured Creditors

The Unsecured Creditors are being paid more than they would receive in a liquidation. The results of the auctions and the inability of the Debtor to raise equity to make the payments set forth in the Plan and refinancing process are evidence of the fact creditors will receive more under the Plan than they would in a liquidation.

### 3.  Holders of Interests

The holders of interests are retaining a vast majority of their interests.  If liquidated, they would receive no distribution.

### 4.  No Unfair Discrimination

In addition, the "cram down" standards of the Bankruptcy Code prohibit "unfair discrimination" with respect to the claims of any impaired, non-accepting class. While the "unfair discrimination" determination depends upon the particular facts of a case and the nature of the claims at issue, in general, courts have interpreted the standard to mean that the impaired, non-accepting class must receive treatment under a plan of reorganization which allocates value

to such class in a manner that is consistent with the treatment given to other classes with claims against the debtor of equal or junior status.

All Classes will receive distributions under the Plan; thus, no Classes are conclusively presumed to have rejected the Plan. Debtor believes that the treatment of all Classes of Claims and Interests under the Plan satisfies the "no unfair discrimination" requirement for nonconsensual confirmation of the Plan under section 1129(b) of the Bankruptcy Code. With respect to each such Impaired, non-accepting Class, there is no Class of equal priority receiving more favorable treatment under the Plan, and no Class that is junior to such Impaired, non-accepting Class will receive or retain any property under the Plan on account of the Claims or Interests in such Class.

## F.     FEASIBILITY

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization unless the liquidation of the debtor is provided for in the plan. It is not likely that the confirmation will be followed by liquidation or the need for further financial reorganization of the Debtor. Financial projections demonstrating the pro forma financial results of the Reorganized Debtor are attached as **Exhibit D-2**.

## G.     BEST INTEREST TEST

In order to confirm a plan of reorganization, the Bankruptcy Court must determine that the plan is in the best interests of all classes of creditors and equity security holders impaired under that plan. The "best interest" test requires that the Bankruptcy Court find that the plan provides to each member of each impaired class of claims and interests (unless each such member has accepted the plan) a recovery which has a value at least equal to the value of the distribution that each creditor or interest holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

All Classes will receive distributions under the Plan; thus, no Classes are conclusively presumed to have rejected the Plan. The Debtor requests confirmation of the Plan over the rejection of any Classes. In so doing, the Debtor seeks to establish that the Plan complies with the best interest of creditors test with respect to any such Class or Classes, and satisfy all other legal criteria for confirmation.

As reflected in the discussion above, and as demonstrated in the Liquidation Analysis attached as an **Exhibit D-3** to this Disclosure Statement, the Debtor believes that the Plan provides to each holder of a Claim and Interest holder a value at least equal to the value of the distribution that each holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

## H.     ABSOLUTE PRIORITY RULE

The Plan, if the Class 17 Creditors do not vote in favor of the Plan, will not satisfy the absolute priority rule. The Debtor believes the Plan will receive the support of Class 17 inasmuch as the Unsecured Creditors Committee supports the Debtor's Plan.

## I .    CERTAIN RISK FACTORS TO BE CONSIDERED

The major risks attendant to the Plan are the following:

A.     The risk that the income and expenses set forth in the projections do not meet the levels projected;

B.     The Plan is not accepted by the Class 17 creditors; and

C.     That Logan Fournerat's health will impair his work at the company.

HOLDERS OF CLAIMS AGAINST AND MEMBERSHIP INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN (AND ANY DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE),

BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND THE IMPLEMENTATION OF THE PLAN.

## J. CERTAIN BANKRUPTCY CONSIDERATIONS

### 1. Risk of Liquidation of the Debtor's Estate

If the Plan is not confirmed and consummated, there can be no assurance that the Debtor's Chapter 11 Case will continue as chapter 11 reorganization case rather than be converted to liquidation, or that any alternative plan of reorganization would be on terms as favorable or more favorable to holders of Claims and Membership Interests as the terms of the Plan. If a liquidation or different reorganization were to occur, the distributions to certain holders of Allowed Claims may be reduced, or possibly completely eliminated. As previously noted, the Debtor believes that in a liquidation under chapter 7, additional administrative expenses of a chapter 7 trustee and such trustee's attorneys, accountants, and other professionals, would cause a diminution in the value of the Debtor's Estate. In addition, certain additional Claims may arise in a chapter 7 liquidation and from the rejection of unexpired leases and other executory contracts in connection with any cessation of the Debtor's operations. As described above, this might negatively impact the amount of distributions under the Plan, if any, to holders of Allowed Claims or Allowed Membership Interests. As a result of these circumstances, the Debtor believes that the Plan provides a significantly higher return to holders of Claims against and Membership Interests in the Debtor, as compared to liquidation.

### 2. Uncertainty Regarding Objections to Claims

The Plan provides that certain objections to Claims can be filed with the Bankruptcy Court after the Effective Date. A creditor may not know that its Claim will be objected to until after the Effective Date.

## IX. RETAINED CLAIMS AND CLAIMS AGAINST OTHERS

Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Reorganization Case: (i) any and all retained claims and Causes of Action accruing to the Debtor or the Estate shall remain assets of and vest in the Reorganized Debtor, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such retained claims and Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Court, and (ii) neither the Debtor, the Estate, nor the Reorganized Debtor waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any retained claims and Causes of Action that constitute property of the Debtor or the Estate: (a) whether or not such retained claims and Causes of Action have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not any such Retained Claim and Cause of Action is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to any such Retained Claim and Cause of Action filed a proof of claim or interest in the Reorganization Case, filed a notice of appearance or any other pleading or notice in the Reorganization Case, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any retained claims and Causes of Action, or potential retained claims and Causes of Action, in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's or the Reorganized Debtor's

right to commence, prosecute, defend against, settle, recover on account of, and realize upon any retained claims and Causes of Action that the Debtor or its Estate have or may have as of the Effective Date.

The Debtor expressly reserves all retained claims and Causes of Action for later adjudication by the Reorganized Debtor, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such retained claims and Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Reorganized Debtor expressly reserves the right to pursue or adopt retained claims and Causes of Action that are alleged in any lawsuits in which the Debtor is a defendant or an interested party, against any Person, including the plaintiffs or co-defendants in such lawsuits.

Any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtor, or who has received money or property from the Debtor, or who has transacted business with the Debtor, or who has leased equipment or property from or to the Debtor should assume that such obligation, receipt, transfer or transaction may be reviewed by the Debtor or the Reorganized Debtor subsequent to the Effective Date and maybe the subject of an action after the Effective Date, whether or not: (a) such Person has filed a proof of Claim or Interest against the Debtor in the Reorganization Case; (b) such Person's proof of Claim or Interest has been objected to by the Debtor; (c) such Person's Claim or Interest was included in the Debtor's Schedules; or (d) such Person's scheduled Claim or Interest has been objected to by the Debtor or has been identified by the Debtor as contingent, unliquidated or disputed. The Debtor expressly reserves its claims pursuant to 11 U.S.C. §§ 544, 547 and 548. The Debtor intends to pursue its claims against A&D Services under 11 U.S.C. § 547. Under the Bankruptcy Code, the Debtor possesses claims against insiders that are reflected on the Debtor's books and records. The claims that will be

preserved by the Debtor shall be certain preference claims and claims against Logan Fournerat and the Fournerat Family LLC as set forth on the Debtor's books and records.

The Debtor does not intend to pursue such claims however efforts will be made to have the statute of limitations on the claims extend to one day after the fifth anniversary of the Effective Date. If all payments are made under the Plan, the Debtor will extend the maturity date of the claims against Logan Fournerat and the Fournerat Family LLC an additional ten (10) years.

## X.     A DISPUTE EXISTS BETWEEN THE DEBTOR AND WELLS FARGO (CLASS 9 CREDITOR).

Wells Fargo makes the following contention that is disputed by the Debtor:

Wells Fargo filed two (2) proofs of claim. Claim No. 88 concerns amounts owed to Wells Fargo by Debtor, as borrower, in connection with Loan No. 703 (as defined in the addendum to Claim No. 88) in the amount of $211,795.33 as of June 27, 2016, plus $12,209.62 in attorneys' fees and costs that had accrued prior to June 27, 2016. Claim No. 87 concerns amounts owed to Wells Fargo by Debtor, as guarantor, in connection with Loan No. 700 (as defined in the addendum to Claim No. 87) in the amount of $275,371.28 as of June 27, 2016. The amounts owed under both Loan No. 700 and Loan No. 703 were secured by, among other things, security interests in the 700 Collateral (as defined in the addendum to Claim No. 87) and the 703 Collateral (as defined in the addendum to Claim No. 88). Since June 27, 2016, Wells Fargo received $202,225.00 in proceeds from the sale of five pieces of 703 Collateral sold by the Debtor on December 12, 2016 and $35,635.00 from the sale of one piece of the 703 Collateral sold by the Debtor on December 22, 2016. Additionally, Wells Fargo received $76,672.73 in net proceeds from the sale at auction of certain pieces of the 700 Collateral on November 10, 2016. The amount still owed by Debtor to Wells Fargo in connection with Claim No. 88 and Claim No.

87 is $184,843.50, repayment of which is secured by one (1) 2011 Mack Model CHU513 bearing VIN 1M1AN07Y8BM007260 and one (1) 2012 Mack Model CHU613 bearing VIN 1M1AN07Y5CM010411 (identified by Debtor as T-1416) (collectively, the "Remaining Collateral"), both of which are included in the 700 Collateral and both of which are currently in the possession of the Debtor.

## XI. CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to any alternative. In addition, any other alternative would involve significant delay, litigation, uncertainty, substantial additional administrative costs, and may result in the Debtor's liquidation. The Debtor urges holders of Impaired Claims and Membership Interests against the Debtor to vote in favor of the Plan.

Dated:  June 6, 2017

DISCLOSURE STATEMENT FILED BY:

Louisiana Crane & Construction, LLC
*/s/ Douglas D. Marcantel*
Douglas D. Marcantel


**HELLER, DRAPER, PATRICK, HORN & DABNEY, L.L.C.**
*/s/ Douglas S. Draper*
William H. Patrick, III, (Bar # 10359)
Douglas S. Draper (Bar # 5073)
Leslie A. Collins, (Bar # 14891)
Greta M. Brouphy, (Bar # 26216)
650 Poydras Street, Suite 2500
New Orleans, Louisiana  70130-6175
Telephone:  504-299-3300
Facsimile:  504-299-3399
wpatrick@hellerdraper.com
ddraper@hellerdraper.com
lcollins@hellerdraper.com
gbrouphy@hellerdraper.com

**Counsel for Debtor**